Lori BAZEMORE, Appellant,

v.

## SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1994.

Decided Feb. 7, 1995.

Publication Ordered April 26, 1995.

Mark S. Pearlstein, for appellant.

Joan Alison Zubras, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Lori Bazemore appeals from an order of the Court of Common Pleas of Philadelphia County granting the Motion for Summary Judgment filed by the Southeastern Pennsylvania Transportation Authority (SEPTA) and dismissing Bazemore's complaint against SEPTA. We affirm.

On September 9, 1991, Bazemore was a passenger on a SEPTA bus. The bus was temporarily stopped at one of its regular bus stops and, as Bazemore attempted to exit through the rear door, she was injured when she slipped and fell on the bus steps, landing on the street below. Bazemore filed an action against SEPTA alleging that her fall was caused by improperly secured rubber on the steps at the back door, and that SEPTA was negligent in that it allowed this dangerous and defective condition to exist, failed to correct the defective condition, failed to warn of the defective condition, failed to maintain the area in a safe condition and failed to act in accordance with the standards imposed

upon a common carrier. (R.R. at 6a–7a.) SEPTA filed a Motion for Summary Judgment asserting that it was immune under section 8521 of the Judicial Code (Code), 42 Pa.C.S. § 8521, because Bazemore's claims did not fall within any of the exceptions to sovereign immunity found at 42 Pa.C.S. § 8522. The trial court granted SEPTA's motion based on our decision in *Miller v. Erie Metropolitan Transit Authority*, 152 Pa.Commonwealth Ct. 64, 618 A.2d 1095 (1992), *appeal denied*, 537 Pa. 643, 644 A.2d 165 (1994).

Pursuant to Code section 8521, 42 Pa.C.S. § 8521, Commonwealth parties are immune from suit except in those instances enumerated in section 8522 of the Code, 42 Pa.C.S. § 8522. On appeal to this court,[1] Bazemore argues that the trial court erred in absolving SEPTA of liability for her injury, contending that her action falls within the motor vehicle exception to sovereign immunity found at Code section 8522(b)(1), 42 Pa. C.S. § 8522(b)(1) (emphasis added), which provides:

> **(b) Acts which may impose liability.—** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims of damages caused by:
>
> > **(1) vehicle liability.—**The *operation* of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

Recognizing our Supreme Court's decision in *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988), Bazemore concedes that, in interpreting the term "operation" for purposes of this exception, the Court initially

---

1. Originally, Bazemore filed this appeal in Superior Court; however, on February 8, 1994, by per curiam order, that court granted SEPTA's petition to transfer the appeal to Commonwealth Court. (R.R. at 52a; Appellant's brief at 1.) Our scope of review of a trial court order granting a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa.Commonwealth Ct. 533, 586 A.2d 1026 (1991). A trial court may properly grant summary judgment when the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.*

seemed to require that the vehicle in question be moving at the time of the accident. In *Love*, a 73 year old, partially blind woman was injured as she exited a city-owned van. In determining that the city was immune from suit, the Court considered "whether the act of entering into or alighting from a motor vehicle constitutes operation of that vehicle under 42 Pa.C.S. § 8542(b)(1)." *Id.* at 373, 543 A.2d at 532. In the absence of a statutory definition for the word "operation," the Court noted that it was constrained to strictly construe the term in order to reflect the expressed legislative intent of insulating governmental agencies from tort liability.[2] The Court then reviewed various dictionary definitions of "operation" and concluded that "to operate something means to actually put it in motion.... Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle." *Id.* at 375, 543 A.2d at 533.

■ Notwithstanding the Court's decision in *Love*, Bazemore, relying on *Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa.Commonwealth Ct. 533, 586 A.2d 1026 (1991), and *Vogel v. Langer*, 131 Pa.Common-wealth Ct. 236, 569 A.2d 1047 (1990), asserts that subsequent cases of our court have adopted a more liberal definition of "operation" to include acts "normally related to the operation of a motor vehicle" even where the vehicle itself is not in motion. Therefore, Bazemore contends that the bus was *in operation* within the meaning of section 8522(b)(1), reasoning that, as a common carrier, the normal role of a SEPTA bus is to pick up passengers, collect their fares, follow a designated route of travel, provide safe passage to those aboard, make temporary stops along the route and discharge passengers.[3]

Bazemore also attempts to distinguish *Love* from the present case on two bases. First, Bazemore points out that *Love* did not involve a common carrier but a city-owned van. In this regard, Bazemore maintains that SEPTA, as a common carrier, owed its passengers a higher duty of care than did the defendant city in *Love*. Second, Bazemore points out that the negligence of the defendant in *Love* involved the placement of a parked vehicle after the driver had turned off the engine and exited the van, whereas the

**2.** The Court also distinguished between "operation" of a motor vehicle as used in the Code, and the phrase "maintenance and use of a motor vehicle" employed by the legislature in the Pennsylvania No–Fault Act, Act of July 19, 1984, P.L. 489, repealed by the Pennsylvania Motor Vehicle Financial Responsibility Law of February 12, 1984, P.L. 26, effective October 1, 1984.

**3.** We cannot agree that these cases indicate any deviation from our Supreme Court's position in *Love*. In *Sonnenberg*, a passenger on a stopped bus was injured when the door of the bus struck her and locked her into position as she was attempting to leave the vehicle. In arguing that governmental immunity should not attach, the passenger in *Sonnenberg* presented two arguments. First, she maintained that the bus *was* in "operation" when her injuries were inflicted, and, alternatively, she claimed that, although the bus itself was not moving, her injuries were caused by a moving attachment of the bus. Premised solely on the *second* of these arguments, we held that even where the entire vehicle is not in motion, the *movement* of one of its parts is sufficient to bring the case within the motor vehicle exception. We also noted that the bus driver's *closing of the bus doors* is an act normally related to the operation of the bus.

In *Vogel*, we held that a bus was in operation within the meaning of the motor vehicle excep-

tion to immunity where the bus was *temporarily stopped in traffic* and the bus driver signalled to another driver, thereby prompting that driver to enter the intersection where his car was struck by another vehicle. Differentiating the facts in *Vogel* from those in *Love*, we noted that the van in *Love* was *not* in traffic but parked at the curb to let off passengers, and we recognized that operation of any motor vehicle necessarily entails momentary stops because of traffic and communication with other drivers. *See also Lehman v. County of Lebanon, Transportation Authority*, 143 Pa.Commonwealth Ct. 416, 599 A.2d 259 (1991).

We also note that the exception in Code section 8522(b)(1) is for the operation of motor vehicles, not common carriers. Thus, even if we were to accept that "operation" of a motor vehicle requires no motion of either the vehicle or one of its attachments, but also consists of acts normally related to its operation, Bazemore still cannot prevail. The activities described by Bazemore, while essential to a bus' purpose as a mode of public transportation, are not related to what constitutes the bus operation as a motor vehicle. If the legislature had wanted "operation" to have a different interpretation for buses or other common carriers than for motor vehicles in general, it would have written a separate exception to reflect the former's higher standard of care. *See Laney v. City of Pittsburgh*, 663 F.Supp. 1097 (W.D.Pa.1987).

present case involves the temporary stopping of a bus for the regular discharge of a passenger by a common carrier which, at all times, had its engine running and the driver in his seat.[4]

In making these arguments, Bazemore discounts our decision in *Miller v. Erie Metropolitan Transit Authority*, 152 Pa.Commonwealth Ct. 64, 618 A.2d 1095 (1992), *appeal denied*, 537 Pa. 643, 644 A.2d 165 (1994), as both absurd and unreasonable. However, like the trial court, we believe that *Miller* directly controls the outcome here. In *Miller*, a passenger slipped on the steps of a bus owned by the transit authority and fell into the street while exiting the bus. The passenger filed a complaint against the transit authority alleging that her injuries resulted from the transit authority's negligent maintenance of the aisles and steps of the bus, which were worn, as well as wet and slippery due to an accumulation of water from an earlier rainfall. In claiming that her action fell within the motor vehicle exception to sovereign immunity, the passenger in *Miller* made precisely the same arguments as Bazemore does here. We considered those arguments and responded as follows:

> [The transit authority] argues that ... under *Love* and *Sonnenberg*, the vehicle liability exception does not apply to this case, as Miller has neither alleged injury resulting from the movement of the bus or any part of the bus nor from an act normally related to the operation of the bus. Miller, however, argues that *Love* is inapplicable to this case because it involved a van rather than a common carrier such as a bus, which is held to a higher duty of care. Miller further argues that even if *Love* is applicable, under *Sonnenberg*, we interpreted *Love* to include the act of alighting from the steps of a bus to be within the vehicle liability exception because it is an activity normally related to the operation of a bus.

> Even if we hold [the transit authority] to a common carrier duty of care standard, that does not vitiate the requirement that the injured party must establish that his or her cause of action falls within one of the exceptions to sovereign immunity. *Hall v. Southeastern Pennsylvania Transportation Authority (SEPTA)*, 141 Pa.Commonwealth Ct. 591, 596 A.2d 1153 (1991). Assuming, *arguendo*, that Miller has proven that [the transit authority] breached its duty of care as a common carrier, we do not believe that she has proven her injuries resulted from an act by [the transit authority] which would fall within the vehicle liability exception to sovereign immunity.

> While we agree that the act of alighting from bus steps into the street is an activity normally related to a passenger's usage of the bus, we do not agree that it is an activity normally related to the "operation" of the bus. As stated in *Love*, operation implies actual movement of the vehicle, van or bus. *Sonnenberg* only holds that movement of any part of the vehicle is included within "operation" and the entire vehicle does not have to move to fall within the exception. Moreover, in *The First National Bank of Pennsylvania v. Babcock*, 148 Pa.Commonwealth Ct. 158, 609 A.2d 911 (1992), we held that movement of the vehicle or part of that vehicle has to cause the injury.

*Miller*, 152 Pa.Commonwealth Ct. at 68–69, 618 A.2d at 1096–97 (footnotes omitted). Based on this reasoning, we concluded that Miller had no cause of action against the transit authority under the motor vehicle exception to sovereign immunity "[b]ecause the definition of 'operation' does not include situations other than those where the injury is the result of the vehicle moving or a moving part of the vehicle." *Id.* at 69, 618 A.2d at 1097.

It is impossible for us to ignore the clear dictates of *Miller*. Like the passenger in that case, here, Bazemore does not allege

---

4. Recently, in *Southeastern Pennsylvania Transportation Authority v. Simpkins*, 167 Pa.Commonwealth Ct. 451, 648 A.2d 591 (1994), we recognized that in *Love*, our Supreme Court interpreted the word "operate" to mean that a vehicle must actually be in motion for the vehicle exception to apply and stated, "[a] vehicle is not in 'operation' for purposes of the vehicle exception merely because the engine of the vehicle is running or because the vehicle was not parked at the time of the injury." *Simpkins*, 167 Pa.Commonwealth Ct. at 456 n. 4, 648 A.2d at 593–94 n. 4.

that her injuries were caused by the movement of the bus or the movement of any of its parts; thus, Bazemore's cause of action would not fall within the motor vehicle exception to sovereign immunity.

Accordingly, we affirm.