509 A.2d 1388

City of Philadelphia, Appellant *v.* Catherine Love, Appellee.

Argued December 11, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Armando A. Pandola, Jr.,* with him, *Jill A. Douthett, Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, *Michael B. Tolcott,* Assistant City Solicitor, and *Barbara W. Mather,* City Solicitor, for appellant.

*John Rogers Carroll,* for appellee.

OPINION BY JUDGE PALLADINO, June 12, 1986:

The City of Philadelphia (City) appeals from a judgment of the Court of Common Pleas of Philadelphia (trial court) in favor of Appellee, Catherine Love, in Appellee's negligence suit against the City. The trial

court, sitting without a jury, awarded Appellee $375,000.00. For the reasons set forth below, we reverse.

The trial court made the following findings of fact. Appellee, a senior citizen, attended the Mann Adult Center, which is operated by the City's Department of Public Health. The City provided transportation for Appellee to and from the Adult Center in a van owned by the City. Because Appellee had impaired vision, she had some trouble ambulating. The driver of the van, Mr. Kitchen, would facilitate getting into and out of the van by placing a stool next to the van's door. Mr. Kitchen normally assisted Appellee from the door of her residence into the van and from the van to her door.

On February 15, 1980, Mr. Kitchen returned Appellee, who was the last occupant of the van that day, to her home. Mr. Kitchen assisted Appellee from the vehicle, but did not walk her to the door of her home. Mr. Kitchen left the stool in the street and proceeded toward the rear of the van to go back to the driver's seat. Appellee fell, and landed in the street with her buttocks about two feet from the stool, and her feet pointed toward the curb, which was approximately three feet away. Mr. Kitchen heard Appellee call for help, discovered her in the street, and summoned Appellee's daughter-in-law and granddaughter from the house. Neither Mr. Kitchen nor Appellee's relatives saw Appellee fall. Appellee fractured her right hip and her right shoulder in the fall, and as a result was placed in a nursing home.

At the start of the trial, the City moved that the trial judge, Judge BERNARD SNYDER, recuse himself because his daughter had been recently fired from the City Solicitor's office. The trial court denied this request, and, following a separate hearing on the recusal issue before a judge in Washington County, the recusal was again denied.[1]

---

[1] This Court ordered a special hearing on the recusal issue, in part because of the inflammatory nature of the accusations leveled

The trial court concluded: 1) that Mr. Kitchen had been negligent because he failed to exercise reasonable care in assisting Appellee from the van; 2) that the City was not immune from liability because the facts of Appellee's case fell within the exception to local agency immunity involving the operation of a motor vehicle; and 3) that Appellee was entitled to a verdict in her favor in the amount of $375,000.00.

The issues presented by the City in this appeal are: 1) whether the "operation of a motor vehicle" exception to local agency immunity applies to the facts of this case; 2) whether Appellee met her burden of proving facts upon which a conclusion of negligence may be made; 3) whether the judge specially appointed for the recusal determination applied an incorrect legal standard; and 4) whether recusal was required under the circumstances of the case. Because we conclude that the City retains its immunity under the facts presented, we reverse.

The provision of the Political Subdivision Tort Claims Act (Act)[2] which the trial court utilized to strip the City of immunity states:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

at the trial judge. The hearing judge, President Judge GLADDEN of the Court of Common Pleas of Washington County, found specifically that the proof presented by the City against the trial judge was *not* enough to support a recusal in *this* case. Much proof was offered concerning the trial judge's conduct of another case involving a libel suit against Philadelphia Magazine. This conduct, while reprehensible, was not a basis for recusal in the *Love* case.

[2] Act of November 26, 1978, P.L. 1399, *as amended,* 53 P.S. §§5311.101-5311.803, repealed by the Act of October 5, 1980, P.L. 693. A similar act may be found in the Judicial Code, 42 Pa. C. S. §§8541-8564.

(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

We must decide whether an individual who assists another person out of a parked motor vehicle onto the street is "operating" the motor vehicle, so as to impose liability on the City if that individual is negligent in providing the assistance.

The trial court determined that alighting from a vehicle constitutes operation of the vehicle under the Act, because Section 103 of the now defunct Pennsylvania No-Fault Motor Vehicle Insurance Act[3] defined maintenance and use of a motor vehicle to include entering into or alighting from it. The trial court held that the stool Mr. Kitchen used to aid Appellee was an appendage of the vehicle, and that its use was an indivisible aspect of the operation of the vehicle. We disagree.

Reference to the No-Fault Act is inappropriate for interpreting the scope of the operation of a motor vehicle for purposes of determining a local agency's liability. The purposes of the two acts were entirely different; the No-Fault Act was essentially remedial, and as such was interpreted liberally. *See Steppling v. Pennsylvania Manufacturers' Association Insurance Co.*, 328 Pa. Superior Ct. 419, 477 A.2d 515 (1984). The Political Subdivision Tort Claims Act confers immunity upon local agencies except for certain limited exceptions. Those exceptions to immunity are to be interpreted narrowly. *Vann v. Board of Education of the School District of*

---

[3] Act of July 19, 1974, P.L. 489, *as amended,* 40 P.S. §1009.103, repealed by the Act of February 12, 1984, P.L. 26.

*Philadelphia,* 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983). We hold that the acts of entering into or getting out of a motor vehicle, for purposes of the Political Subdivision Tort Claims Act, do not constitute the operation of that vehicle. Thus, Mr. Kitchen's assisting Appellee out of a side door of the City's van was not operation of the van. The trial court incorrectly held otherwise.

Because the actions of Mr. Kitchen did not bring the City within the language of the Act's motor vehicle exception, the City was immune from liability. Accordingly, the decision of the trial court is reversed.[4]

### ORDER

AND NOW, June 12, 1986, the decision of the Court of Common Pleas of Philadelphia at No. 1286 May Term 1980 is reversed.

---

[4] Because of our disposition of the case on the basis of the City's immunity, we do not reach the questions of whether Appellee had in fact met her burden of proving negligence or whether recusal should have been ordered.

---

### DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent from the reasoning of the majority and would not so narrowly construe the Political Subdivision Tort Claims Act[1] as to allow the negligent conduct of an operator of a municipal motor vehicle to escape responsibility where such conduct generally is within the intended use of the vehicle and likewise entails the use of the vehicle's appurtenant parts. The acts of entering into or getting out of the motor vehicle, in my opinion, are within the meaning of the intended "operation" of that motor vehicle.

---

[1] Act of November 26, 1978, P.L. 1399, *as amended,* 53 P.S. §§5311.101-5311.803, repealed by the Act of October 5, 1980, P.L. 693. A similar act may be found in the Judicial Code, 42 Pa. C. S. §§8541-8564.

I would, however, reverse the order of the trial judge specially presiding over the hearing relating to the recusal issue on the basis that an erroneous standard was employed in reviewing the actions of Judge SNYDER. *See Municipal Publications, Inc. v. Court of Common Pleas of Philadelphia County*, 507 Pa. 194, 489 A.2d 1286 (1985). Accordingly, the exceptions *nunc pro tunc* of the City of Philadelphia in that regard should be sustained and the matter remanded for a new trial.

———

DISSENTING OPINION BY JUDGE COLINS:

I dissent.

I believe that an operator's alleged negligence in assisting elderly individuals into or out of a motor vehicle should constitute negligence in the operation of that vehicle for purposes of the Political Subdivision Tort Claims Act.

I would affirm the judgment of the trial court.

President Judge CRUMLISH, JR. joins in this dissent.