543 A.2d 531

**Catherine LOVE, Appellant,**

v.

**CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1987.

Decided June 1, 1988.

John Rogers Carroll, Philadelphia, for appellant.

Barbara Axelrod, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Catherine Love appeals from an order of the Commonwealth Court reversing an order of the Philadelphia Court of Common Pleas which entered judgment for appellant against the City of Philadelphia, 98 Pa.Cmwlth. 138, 509

A.2d 1388.  The facts as found by the trial court are as follows.[1]

In approximately August of 1979, Catherine Love, then age 73, began attending the Mann Adult Center which was administered by the City of Philadelphia, Department of Public Health.  Mrs. Love was transported to and from the Mann Center in a city owned van driven by Mr. Robert Kitchen.  Mrs. Love was blind in one eye and had impaired vision in the other, and therefore required assistance boarding and alighting from the van.  Mr. Kitchen usually parked the van at the curb in front of Mrs. Love's home. He would place a portable step at the doors to the van and would assist Mrs. Love in and out of the van.

On the afternoon of February 15, 1980, Mr. Kitchen transported Mrs. Love, the last occupant of the van that day, from the Mann Center to her home.  Mrs. Love fell while alighting from the van, landing in the street with her feet approximately three feet from the curb line and her back approximately two feet from the portable step which had been placed next to the van.

Mr. Kitchen became aware that Mrs. Love had fallen and summoned the help of Mrs. Love's daughter-in-law and granddaughter.  The Philadelphia Police were called and Mrs. Love was transported to Episcopal Hospital for treatment of her injuries.  Mrs. Love suffered multiple injuries and was subsequently placed in a nursing home.

Catherine Love filed an action against the City of Philadelphia alleging that the city's negligence caused her injuries.  The case was heard non-jury.  At the conclusion of the trial the judge entered a verdict for Catherine Love against the city in the amount of $375,000.00.  The court held that Mrs. Love's injuries were caused by the negligence of an employee of the City of Philadelphia who was

1.  The Commonwealth Court reversed the trial court on a pure question of law, accepting for the moment the facts as found by the trial judge.  We also accept the trial judge's factual findings at face value, and our recounting of the facts herein should not be interpreted as a ruling on the City's challenge to the sufficiency of the evidence in support of these findings.

acting within the scope of his employment, and that Mrs. Love's cause of action came within the "motor vehicle" exception to the Political Subdivision Tort Claims Act.[2]

The city appealed to the Commonwealth Court which reversed the trial court's verdict, holding that the facts of this case did not fall under the "motor vehicle" exception. Hence, the city was held to be immune from suit.[3]

Catherine Love petitioned this court for allowance of appeal, and we granted allocatur. Her appeal presents one issue: whether the act of entering into or alighting from a motor vehicle constitutes operation of that vehicle under 42 Pa.C.S. § 8542(b)(1).

Local agencies are immune from tort liability except for certain specific exceptions enumerated in the Political Subdivision Tort Claims Act.[4] One of those exceptions applies to vehicle liability, and it provides in relevant part that liability may result from "[t]he operation of any motor vehicle in the possession or control of the local agency . . . ."[5]

The statute does not define the word "operation", nor is it defined in the general definition section of the consolidated statutes.[6] It is therefore our responsibility to derive the intent of the General Assembly in using the word. *See* Statutory Construction Act of 1972. 1 Pa.C.S. § 1921(a).

In the recent case of *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), this Court held that

**2.** 42 Pa.C.S. § 8542(b)(1) provides that:
   The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
   (1) vehicle liability—The operation of any motor vehicle in the possession or control of the local agency. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

**3.** Since the Commonwealth Court's decision on the immunity issue disposed of the case, the court did not reach the City's additional issues.

**4.** 42 Pa.C.S. § 8542(b).

**5.** 42 Pa.C.S. § 8542(b)(1).

**6.** 1 Pa.C.S. § 1991.

exceptions to governmental immunity were to be "narrowly interpreted ... given the expressed legislative intent to insulate political subdivisions from tort liability." *Id.*, 514 Pa. at 361, 523 A.2d at 1123 (1987). See *Casey v. Geiger*, 346 Pa.Super. 279, 499 A.2d 606 (1985); *Vann v. Board of Education of the School District of Philadelphia*, 76 Pa. Cmwlth. 604, 464 A.2d 684 (1983). Therefore, we are constrained to strictly construe the crucial term, i.e. "operation".

Where terms are not otherwise defined "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903. We have generally used dictionaries as source material for determining the common and approved usage of a term. *See* e.g. *Matthews v. Konieczny*, 515 Pa. 106, 527 A.2d 508 (1987), in which we interpreted the meaning of "customer" as it pertained to an immunity provision of the Liquor Code.

Black's Law Dictionary defines the word "operate" as follows:

> This word, when used with relation to automobiles, signifies a personal act in working the mechanism of the automobile ... (citations omitted)

Black's further defines "operation" as: the process of operating or mode of action." Black's Law Dictionary, p. 984 (rev. 5th ed. 1979).

Similar definitions are found in the Oxford Dictionary. *See* Oxford English Dictionary, Volume VII, p. 144 (1933). The American Heritage Dictionary defines "operation" as "[t]o run or control the functioning of: operate a machine"; and defines "operation" as "[t]he state of being operative or functioning in operation." *See* The American Heritage Dictionary of the English Language, p. 920 (7th ed. 1971).

The trial court eschewed these dictionary definitions, choosing instead to look to the Pennsylvania No–Fault Act.[7] By this analytical method the court found that "operation"

7. Act of July 19, 1984, P.L. 489 *As amended.* 40 P.S. § 1009.101 et seq. repealed by the Act of February 12, 1984, P.L. 26.

included entering into or alighting from the vehicle. However, the definition relied upon by the trial court, found at 40 P.S. § 1009.103 referred to the "maintenance and use of a motor vehicle." [8] It did not define "operation" of a vehicle and thus was inapplicable to this case. Furthermore, as the Commonwealth Court noted, the No–Fault Act was intended to be broadly construed to provide coverage wherever possible. As we have noted, that was not the legislative intention behind the motor vehicle exception to governmental immunity.

Reference to the No–Fault Act is instructive, however, on one point, in that it demonstrates that the General Assembly recognized a distinction between the term "operation" and the phrase "maintenance and use," since it carefully chose to use one term in one context but not in the other. The General Assembly does not lightly choose its words, and the choice of distinct descriptions cannot be ignored. *See Daly v. Hemphill,* 411 Pa. 263, 273, 191 A.2d 835, 842 (1963). Thus the term "operates" must have been intended to mean something other than "maintenance and use."

As we have illustrated, to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle. Thus, according to the common and approved usage of the word "operation", the van was not in operation at the time of Mrs. Love's accident. Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle.

In summary, we wish to emphasize that the issue here is not whether one may be tortiously injured entering or alighting from a stopped vehicle. Rather, the issue is the confining question of whether a political subdivision is immunized from suit when one is so injured, notwithstand-

8. 40 P.S. § 1009.103 stated in relevant part:
   "Maintenance and use of a motor vehicle means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it."

ing what may be the actual tort of their employees. The legislature, for reasons of policy, reasons we are not entitled to dilute for sympathy or even outrage at specific instances of blatant tort, has decided that such an immunity does exist, and we must abide, sometimes leaving dreadful injuries, negligently inflicted, uncompensated. *See Mascaro, supra.*

The juridicial concept that where there is a wrong there must be a right often depends on the wisdom and large responsibility of the legislature. What rights for what wrongs are generally their prerogative and apportioned in the exercise of their many responsibilities and competing needs. Their task, like ours, is never easy. However, it is our duty to respect and enforce their judgment, even with heavy hearts in particular instances.

Therefore, we affirm the order of the Commonwealth Court.

LARSEN and PAPADAKOS, JJ., file dissenting opinions.

LARSEN, Justice, dissenting.

I dissent; I object to the majority's narrow interpretation of the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541–8564. *See Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) (Larsen, J., dissenting).

PAPADAKOS, Justice, dissenting.

I respectfully dissent from the majority's construction of the term "operation" as contained in the motor vehicle exception to immunity from tort liability of the Political Subdivision Tort Claims Act. 42 Pa.C.S. § 8541(b)(1). I agree that exceptions to governmental immunity under the Act are to be "narrowly interpreted," *Mascaro v. Youth Study Center*, 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987). However, I do not believe that the legislature intended so narrow a construction as to permit avoidance of responsibility for the negligent conduct of the operator of a City vehicle where the conduct was within the course and scope

of the operator's employment and, in my view, constituted operation of the vehicle. The majority, in the name of strict construction, has arrived at a result which is contrary to law, logic and fundamental justice.

Under the majority's interpretation, one can only be operating a vehicle if he actually puts it in motion or drives it. If the legislature so intended, I am sure it is capable of making such a distinction by using the appropriate language. The legislature used the term operation of a vehicle and this includes conduct which is generally within the intended use of the vehicle and entails the use of the vehicle's appurtenant parts. In construing the term operation for purposes of the drunk driving statute, it has been held that: "[a] driver may be in 'actual physical control' of his car and therefore 'operating' it while it is parked or merely standing still 'so long as [the driver is] keeping the car in restraint or is in a position to regulate its movements.' " *Commonwealth v. Kloch*, 230 Pa.Superior Ct. 563, 327 A.2d 375 (1974) (allocatur denied February 3, 1975).

Moreover, the term operation cannot be construed without regard to the facts of this case and the duties of the operator with respect to the vehicle and the Appellant. The operator was responsible not only for the transportation of Catherine Love to and from the Mann Adult Center, but also to help her in getting in and out of the van with the assistance of a stool that was to be used at all times. The operator also testified that it was his duty to deliver her safely on to the walk. In light of the fact that Mrs. Love was found in the street approximately three feet from the curb line with her back approximately two feet from the stool, it becomes clear that the operator did not get her safely to the sidewalk. The trial court found that Mrs. Love's injuries were incurred while alighting from the vehicle, that alighting from the vehicle is an adjunct of the operation of the vehicle since a stool was used to assist with the ingress and egress of the passenger. The court also found that the stool was an appendage of the vehicle and a necessary and indispensable component of the operation of

the vehicle as it related to the transportation of Mrs. Love, and that alighting from the van by the use of the stool is an indivisible aspect of the operation of the vehicle.

I agree with the trial court conclusion and would, for the reasons stated, reverse the decision of the Commonwealth Court and reinstate the judgment of the trial court.