**MARSHALL TOWNSHIP BOARD OF SUPERVISORS**

v.

**MARSHALL TOWNSHIP ZONING HEARING BOARD and American Portable Telecom, Inc.**

**APT PITTSBURGH LIMITED PART-NERSHIP, d/b/a American Portable Telecom**

v.

**MARSHALL TOWNSHIP BOARD OF SUPERVISORS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 16, 1998.
Decided June 11, 1998.
Publication Ordered Aug. 19, 1998.

Robert A. Loch, Pittsburgh, for appellant.

Clifford B. Levine, Pittsburgh, for appellee, APT Pittsburgh Limited Partnership.

Beth Slagle, Pittsburgh, for appellees, Marshall Township Zoning Hearing Board.

Before PELLEGRINI and FLAHERTY, JJ., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

The Marshall Township Board of Supervisors (Supervisors) appeals from an order of the Court of Common Pleas of Allegheny County (the trial court). The trial court order reversed the Supervisors' denial of applications for conditional use and site plan approval filed by APT Limited Partnership d/b/a American Portable Telecom (APT). The trial court order also affirmed the determination by the Marshall Township Zoning Hearing Board (ZHB) that APT was not required to file a subdivision plan. We affirm.

The facts in this case are as follows. APT sought to remove one of many 100–foot lamp poles in a parking lot on property owned by the United States Post Office known as the U.S. Postal Service Bulk Mail Center located at 300 Brush Creek Road (the bulk mail facility). APT wanted to replace the lamp pole with a 150–foot pole (the antenna and light pole) that has replacement lights located at its 100–foot mark and antennae at its .150–foot mark. In addition, APT would erect up to 5 cabinets which will house associated equipment at the base of the antenna and light pole. The 5 equipment cabinets are roughly 5 feet in height and will together, at most, be 10 feet 6 inches wide.

The Postal Service has leased a portion of its parking lot to National Wireless Infrastructure L.P. (Unisite). APT has apparently leased not land per se but "capacity at the site" from Unisite. Under the lease between APT and Unisite, APT agreed to construct

and maintain an antenna and light pole at the parking lot of the bulk mail facility. Unisite, in turn, agreed to allow APT to place its communications equipment at the antenna and light pole for renewable periods of 5 years. This lease also identified the area in which the antenna and light pole was to be located.

The bulk mail facility and all of the lots adjoining the bulk mail facility are located in an area zoned as a Planned Industrial Park (PIP). "Communications facilities," which is what the antenna and light pole constitute as defined by the Marshall Township Zoning Ordinance, are permitted in the PIP district as conditional uses. The bulk mail facility is a permitted use.

Because the antenna and light pole was proposed to be built on a lot with an existing permitted use (namely, the bulk mail facility), the Marshall Township Zoning Officer required that APT submit a subdivision application, ostensibly to avoid the provisions of the Marshall Township Zoning Ordinance (Zoning Ordinance) which prohibits more than one "principal building" on a single lot. Thus began the instant litigation.

APT appealed the Zoning Officer's decision to the ZHB. The ZHB issued a ruling that APT was not required to file a subdivision plan for its proposed antenna and light pole. The Supervisors appealed the ZHB's decision to the trial court.

APT had also filed an application with the Supervisors for a conditional use permit and a site plan approval for its erecting of the antenna and light pole. The Supervisors denied the applications. APT appealed that decision to the trial court.

█ The trial court consolidated the two appeals and affirmed the ZHB decision but reversed the Supervisors' decision. The Supervisors then filed an appeal to this Court. Appellate review over a denial of a conditional use permit is limited to determining whether the Supervisors abused their discretion or an error of law has been committed. *Visionquest National Ltd. v. Board of Supervisors of Honey Brook Township*, 524 Pa. 107, 569 A.2d 915 (1990). Likewise, appellate review over the ZHB's determination that APT was not required to file a subdivision plan is limited to determining whether the ZHB committed an error of law or abused its discretion. *Solow v. Zoning Hearing Board of Borough of Whitehall*, 64 Pa.Cmwlth. 414, 440 A.2d 683 (1982).

The first issue which the Supervisors raise is: does APT's failure to subdivide the property create two principal uses and two principal buildings on a single lot where the Zoning Ordinance expressly states that a lot may not accommodate more than one principal building? The Supervisors assert that the Zoning Ordinance prohibits more than one principal building on a single lot. Section 208–9 of the Zoning Ordinance provides that "a lot may accommodate no more than one (1) principal building." The parties do not dispute that no more than one principal building may occupy a single lot. The Supervisors argue that the bulk mail facility on the undivided lot already constitutes one principal use and principal building upon the lot. The Supervisors argue that the antenna and light pole constitute a "principal building" and a "principal use" within the meaning of the Zoning Ordinance and by adding it to the lot, APT is violating the Zoning Ordinance's prohibition against two principal buildings on a single lot.

The Zoning Ordinance defines "principal building" as "a building in which is conducted the main or principal use of the lot on which said building is located." Section 208–9 Zoning Ordinance. "Building" is defined as "[a]ny structure used or intended for supporting or sheltering any use or occupancy." "Structure" is, in turn, defined as "[a]ny man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land." "Use" is defined as "[a]ny purpose for which a structure, building or tract of land may be designed, arranged, intended, maintained, occupied; also, any activity, occupation, business or operation carried on or intended to be carried on in a structure, building or tract of land." "Principal use" is defined as the "main use of land or structures, as distinguished from a secondary or accessory use."

█ When the relevant definitions are read together, we find that the antenna and

light pole constitutes a "building" within the meaning of the Zoning Ordinance. The antenna and light pole is certainly a "man-made object having an ascertainable stationary location on or in land." Moreover, the antenna and light pole is a structure which is "used or intended for supporting or sheltering any use" i.e., "[a]ny purpose for which a structure, building or tract of land may be designed, arranged, intended, maintained [or] occupied." Thus, the antenna and light pole is a "building" within the meaning of the Zoning Ordinance. However, the Zoning Ordinance does not prohibit multiple buildings on a single lot. It only prohibits more than one principal building on a single lot. Thus, the question remains as to whether the antenna and light pole constitute a principal building.

■ A "Principal building" is defined as "[a] building in which is conducted the main or principal use of the lot on which the building is located." In turn, "principal use" is defined as "[t]he main use of land or structures, as distinguished from a secondary or accessory use." "Lot" is defined as "a designated parcel, tract or area of land established by a plat or otherwise as permitted by law, having its principal frontage upon a street or officially approved place and to be used, developed or built upon as a unit." We note that "principal building" is defined in terms of "the main or principal use of the **lot**" (emphasis added). When we turn to the definition of "lot" we must conclude that the relevant "lot" for purposes of deciding this case is the "lot" of the bulk mail facility comprising some 75 acres. The lot of the bulk mail facility is a designated area of land established by plat or otherwise as permitted by law, having its principal frontage upon a street or officially approved place and is used, developed or built upon as a unit. In contrast, the area leased by Unisite is not a "lot" within the meaning of the Zoning Ordinance because, inter alia, it is not an area of land **having its principal frontage upon a street or officially approved place.**

Hence, the question then becomes what is the principal use of the 75–acre lot? The principal use of this 75–acre lot is the bulk mail facility with its attendant parking lot.

As the ZHB found, "while the lease agreement between the Post office and APT [sic, should be Unisite] identifies a lease area measuring 200 feet × 200 feet, the monopole [i.e., the antenna and light pole] which will support both APT's communications equipment and the Post Office's lighting fixtures will occupy only a small portion of said area; the remainder of the area is currently utilized and will continue to be utilized by the Post Office." Finding of Fact (F.F.) No. 4 by the ZHB. We note that this finding is supported by substantial evidence and as such is binding upon this Court. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991).

■ Indeed, we find that the light and antenna pole does not constitute a "principal building" because it does not constitute a "principal use of land" within the meaning of the Zoning Ordinance. The definition of "principal use" for purposes of defining "principal building" distinguishes between the main use of land and "a secondary **or** accessory use" (emphasis added). The Zoning Ordinance defines "accessory use" as being a "use incidental to and on the same lot as a principal use." However, the Zoning Ordinance does not define "secondary." Where a statute or ordinance does not define a term, we are instructed that the ordinary dictionary definition is to be accorded to such a term. 1 Pa.C.S. § 1903; *See, e.g., Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988). Merriam Webster's Collegiate Dictionary, 10th edition, defines "secondary" as

1 **a:** of second rank, importance or value ... 2 **a:** immediately derived from something original, primary or basic....

When compared with the bulk mail facility and its attendant parking lots, the antenna and light pole is, in relationship to the lot, of second rank, importance or value. Thus, we find that because the antenna and light pole constitutes merely a "secondary" use of the lot and not a "principal use" of the lot, the antenna and light pole cannot be a "principal building" within the meaning of the Zoning Ordinance. We note that this disposition comports with the principle that to the extent

that there is any ambiguity in a zoning ordinance term such as "principal use" or "secondary," the ambiguity is to be construed against the drafter, which is in this case, Marshall Township. Section 603.1 of the Municipalities Planning Code (MPC) Act of July 31, 1968, P.L. 805, added by Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10603.1

Because the principal use of the 75–acre lot is the bulk mail facility, the light and antenna pole cannot constitute a "principal building" within the meaning of the Zoning Ordinance. As such, the erecting of the light and antenna pole does not impermissibly establish 2 principal buildings upon a single lot in contravention of the Zoning Ordinance as the Supervisors contend and therefore does not require a subdivision.[1]

▪ Next, the Supervisors argue that the construction of the antenna and light pole constitutes a "subdivision" and "land development" within the meaning of the Pennsylvania Municipalities Planning Code[2] and of the Marshall Township Land Development Ordinance, and as such, it requires the submission of a subdivision plan. The MPC defines "land development" as follows:

(1) The improvement of one lot or two or more contiguous lots, tracts, or parcels of land for any purpose involving:

(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or

(ii) the division of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

(2) A subdivision of land.

(3) Development in accordance with section 503(1.1).

53 P.S. § 10107.[3]

The ZHB and APT both argue that the construction of the light and antenna pole does not constitute "land development" or a "subdivision" within the meaning of the MPC. In support of its contention that APT's proposal does not constitute "land development," the ZHB points to the case of *Tu–Way Tower Co. v. Zoning Hearing Board of the Township of Salisbury,* 688 A.2d 744 (Pa.Cmwlth.1997). In *Tu–Way,* Tu–Way sought to add an additional 200 feet to its pre-existing 200–foot communications tower and to erect two additional 200 foot communications towers together with unmanned accessory electronics buildings on a twelve acre lot which it already owned. Tu–Way applied to Salisbury Township for special exceptions. After Tu–Way applied, Salisbury Township gave public notice of a proposed amendment to its zoning ordinance affecting communications towers. The amendments would cause Tu–Way's planned expansion to be out of compliance with the zoning ordinance. Tu–

---

1. The Supervisors argue that the light and antenna pole is a use which cannot be considered part of the bulk mail facility because the light and antenna pole has "a completely different purpose than the postal facility. For these reasons the tower and sheds [i.e., the light and antenna pole] must be considered an independent, principal use as well." Supervisors' brief at 14. While it may be true that the "principal use" of the light and antenna pole is as a "communications facility" which may constitute a use entirely different from the bulk mail facility, this alone does not render the light and antenna pole a "principal building." Given the Zoning Ordinance's definition of "principal building" the proper inquiry is not, as the Supervisors seem to believe, i.e., are there different structures on one lot with different purposes or principal uses. Rather, the proper inquiry is what is the principal use of the lot, for the principal building is a function of

being the "building in which is conducted the main or principal use of the lot on which said building is located." We agree with the Supervisors that the Zoning Ordinance prohibits more than one "principal building" on a single "lot." However, we disagree with the Supervisors in that we find no similar provision barring the construction of different "structures" with differing "principal uses" on a single lot and the Supervisors point to none.

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

3. The Supervisors note that Marshall Township has adopted the MPC definition of "land development" and "subdivision." Supervisors' brief at pp. 15–16. Accordingly, what is said of the MPC definitions is dispositive of both the MPC and the local ordinance.

Way argued that its proposed expansion of the one tower by 200 feet and its construction of the two other towers constituted "land development" or a "subdivision" within the meaning of the MPC. Tu–Way argued this because the MPC provides that if an application for special exception is pending, any proposed amendments of the zoning or land division ordinances announced during the pendency of such application will not affect the application so long as the subject matter of the application constitutes "land development" or a "subdivision" within the meaning of the § 603(c)(2.1) MPC, 53 P.S. § 10603(c)(2.1). In rejecting Tu–Way's argument, this Court stated that

> We agree with the [Zoning Hearing] Board and common pleas court that Tu–Way's proposal does not fall under either of these definitions. First, it is very clear that Tu–Way is not proposing the division or redivision of a piece of land; therefore, Tu–Way is not proposing a subdivision.
>
> Second, Tu–Way is not proposing the development of its land with residential or nonresidential buildings. The fact that Tu–Way wishes to construct buildings accessory to its proposed towers does not raise its proposal to a level of land development. Tu–Way did not come before the Board to develop its land with residential or commercial buildings, but rather, to extend a tower or erect additional towers, activities which are not defined as land development under the MPC.

*Id.* at 747. What was said in *Tu–Way* is also applicable herein. Just as in *Tu–Way*, APT is not proposing the development of land with residential or nonresidential buildings, and the fact that it wishes to construct accessory equipment cabinets, does not raise its proposal to a level of land development. Indeed, if adding 200 feet to a tower and constructing two separate 200 foot towers along with accessory buildings is not land development, we must conclude that merely adding antennae and 50 feet to a 100 foot tower likewise does not constitute "land development" within the meaning of the MPC.

APT also directs this Court's attention to *Cassidy v. Lawrence U. Ginter, Inc.*, 6 Pa. Cmwlth. 430, 296 A.2d 293 (1972) in support of the proposition that APT's proposal does not constitute a "subdivision" within the meaning of the MPC. In *Cassidy*, a corporation owned five acres of land and wished to construct 24 apartment units including the construction of internal streets. The Borough authorities declined to grant the landowner permission, citing its non-compliance with the Borough's land subdivision ordinance. In *Cassidy*, this Court stated the issue as "whether the borough's land subdivision ordinance is applicable to land for which the owner seeks a building permit to erect twenty-four apartment units without subdividing or partitioning the tract into separate parcels." *Id.* 296 A.2d at 294. We concluded that the subdivision ordinance did not apply because the definition of subdivision did not encompass the proposed construction.[4] If the construction of 24 apartment units, intending to be leased to tenants, did not require subdivision in *Cassidy*, the bulk mail facility's leasing of property to Unisite or APT for the construction of a antenna and light pole with accessory equipment cabinets likewise does not constitute "subdivision" within the meaning of the MPC.

▇ Next the Supervisors contend that APT does not have standing to submit an application for the construction of the tower because the Zoning Ordinance requires that the applicant be either a "landowner" or "developer" as those terms are defined within the MPC. The MPC defines "landowner" as

> [t]he legal or beneficial owner or owners of land including the holders of an option or contract to purchase (whether or not such

---

4. The MPC definition of "subdivision" is "the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development...." The definition of "subdivision" at issue in *Cassidy*, was "the division of a single lot, tract or parcel of land, or part thereof, into two or more lots, tracts or parcels." For purposes of this case, we find no legally significant difference between the definition of subdivision in Cassidy and the definition of subdivision at issue here.

option or contract is subject to any condition), a lessee if he is authorized under any lease to exercise the rights of the landowner, or other person having a proprietary interest in the land.

Section 107 of the MPC, 53 P.S. § 10107. The Supervisors argue that because APT merely leases "capacity", essentially, space on the pole for its antennae and does not lease any land, it is not a "lessee" of land within the meaning of the MPC. After review of the record, we must conclude that APT is in fact a "landowner" within the meaning of the MPC. The Supervisors concede that the lease between the Postal Service and Unisite is a lease of land. Supervisors' Brief at p. 22. Thus, Unisite is a "landowner" within the meaning of the MPC as an "other person having a proprietary interest in land." *See, e.g., Graham Realty Co. v. Department of Transportation,* 67 Pa. Cmwlth. 318, 447 A.2d 342, 344 (1982) (leasehold interest gives lessee a property interest in land). Reading the lease between APT and Unisite, it is apparent that the lease authorizes APT, Unisite's "lessee," to "exercise the rights of the landowner" i.e., Unisite, within the meaning of the MPC. Thus, the Supervisors' argument that APT lacks standing fails.[5]

Lastly, the Supervisors argue that their decision denying APT's application should be upheld on the grounds that APT did not comply with all of the requirements as set forth in the Zoning Ordinance. The Supervisors essentially contended that APT could co-locate its antennae on a pre-existing communications tower owned by Bell Atlantic Nynex Mobile. The Supervisors argue that because APT failed to prove that it cannot locate its antennae on pre-existing towers as required by the Zoning Ordinance as a pre-condition for approval of building new antenna poles, the Supervisors' denial should be upheld by this Court. The Supervisors also argue that because APT failed to provide a "Bufferyard D" as required by the Corridor Enhancement District which overlays the area at issue, this Court should uphold their denial.

■ As regards the issue of whether APT could utilize a pre-existing communications tower owned by Bell Atlantic Nynex Mobile, we find that we must agree with the trial court's conclusions that:

> APT has provided abundant unrebutted evidence and testimony that the neighboring Bell Atlantic Nynex Mobile Tower did not provide a technologically feasible site for the APT antenna. Additionally, APT had received no response to its co-location inquiries from Bell Atlantic at the time of the hearing. The only evidence of record supports APT's assertion that the Bell Atlantic Site was not workable, and the Board's opinion to the contrary is not supported by substantial evidence.

Trial Court's slip op. at 3.

■ As to the Bufferyard D issue, we again must agree with the trial court when it concluded that the Supervisors were trying to get APT to provide a Bufferyard for the whole bulk mail facility because at the time of the construction of the bulk mail facility, the bufferyard requirements were not as stringent as now. The trial court stated that APT's

> plans as submitted satisfy §208–290 (H)'s requirement of a Type B bufferyard as defined in Appendix A to Chapter 208. Nevertheless, based on the fact that the Bulk Mail facility is located partially within a Corridor Enhancement Overlay District, and the [light and antenna pole] is also in the Corridor Enhancement District, the Supervisors have required a far more extensive Type D bufferyard along the entire boundary of the Bulk Mail Facility with Brush Creek Road. Because the Bulk Mail Facility predates the property's subsequent classification in a Corridor Enhancement District, it is legally nonconforming as to its bufferyards. The addition of APT's modest use to the site cannot be used as an excuse to precipitate compliance with the Type D bufferyard requirements, especially where the enlarged bufferyard would relate not to the

---

5. Because we find that APT is a "landowner," we need not decide whether APT is also a "developer" for purposes of standing.

APT [antenna and light pole] but to the Bulk Mail Facility itself.

Trial court slip op. at 3–4. Thus, we affirm the trial court's decision in this regard.

Accordingly, having found no error in the ZHB's decision relieving APT of the requirement that it file a subdivision plan and having concluded that the Supervisors did err in denying APT's applications, we affirm that trial court's order which affirmed the ZHB and reversed the Supervisors.

### ORDER

NOW, June 11, 1998, the order of the Court of Common Pleas of Allegheny County, docketed at Nos. S.A. 111–97 and 225–97, and dated June 5, 1997 is hereby affirmed.