Anthony MANNELLA, by Mary MANNELLA, his attorney-in-fact

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2009.

Decided Oct. 6, 2009.

Colin Meneely, Pittsburgh, for appellant.

Stephen P. Drexler, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.*

Before this Court is an interlocutory appeal involving the issue of whether a bus driver's negligent placement of a bus wheelchair ramp falls within the vehicle exception to sovereign immunity under Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1).

Anthony Mannella, by Mary Mannella, his attorney-in-fact (collectively, "Mannella") filed an action against the Port Authority of Allegheny County (Port Authority) in the Court of Common Pleas of Allegheny County (trial court) alleging that a Port Authority bus driver negligently deployed the bus wheelchair ramp unevenly with the ground without properly securing it, causing him to fall out of his wheelchair and sustain serious injuries.[1] After the pleadings were closed,

---

* This opinion was reassigned to the authoring judge on September 15, 2009.

1. Mannella alleged that his losses, injuries and damages were caused solely by the Port Authority's negligence, specifically:

 a. In failing to adequately maintain the wheelchair ramp in a manner that would assure its safe operation;

 b. In failing to take adequate measures to ensure the safety of patrons on its transportation system;

 c. In failing to insure that the wheelchair ramp was properly secured on the ground when Defendant knew, or by the exercise of reasonable care, should have known, that if the ramp was not properly placed on the

the Port Authority filed a motion for summary judgment. Citing *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988), and cases that followed, it contended that Mannella's injuries did not fall within the vehicle exception to immunity because it was undisputed that neither the bus nor the wheelchair ramp was in operation at the time.

The trial court denied the Port Authority's motion for summary judgment. Finding that there were no questions of fact and that only a question of law remained, the trial court directed the parties to file a petition for interlocutory appeal with this Court to determine whether the negligent placement of the ramp fell within the vehicle exception to sovereign immunity.

The Port Authority filed a petition with this court for permission to appeal an interlocutory order pursuant to Pa.R.A.P. 1311, which we granted to consider the following issue:

> Whether Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1), relating to the statutory exception to sovereign immunity associated with the operation of a motor vehicle, applies to the instant action filed against the Port Authority of Allegheny County (the Authority) for negligently lowering a

wheelchair ramp on a bus operated by the authority thereby injuring Appellee such that sovereign immunity has been waived?

(R.R. at 65a.) [2]

 While the Port Authority is a Commonwealth agency entitled to sovereign immunity, *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990), the General Assembly created exceptions to that immunity when it enacted what is commonly know as the Sovereign Immunity Act.[3] Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, provides that a Commonwealth party's sovereign immunity is waived where: (1) the alleged act of the Commonwealth party is a negligent act for which damages would be recoverable under the common law or by statute, and (2) the act of the Commonwealth party falls within one of the exceptions listed in 42 Pa.C.S. § 8522(b).[4]

 The exception at issue here is the vehicle exception to sovereign immunity found at Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1), which provides, in relevant part:

> (1) Vehicle liability.—The **operation** of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle"

ground, a hazardous condition leading to injury of the Plaintiff would result;
d. In failing to observe the positioning of the wheelchair ramp prior to allowing Plaintiff to use it;
e. In failing to exercise reasonable care in hiring, employing, supervising and retaining bus drivers; and
f. In failing to insure proper training of its drivers.
(Mannella Complaint, ¶ 13 at 3.) (Reproduced Record (R.R.) at 5a.)

2. Our scope of review for a grant or denial of a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. LaBarr,* 159 Pa.Cmwlth. 99, 632

A.2d 1002 (1993). Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Id.*

3. 42 Pa.C.S. §§ 8501–8528.

4. Exceptions to sovereign immunity must be strictly construed and narrowly interpreted because of the clear intent to insulate the government from exposure to tort liability. *Dean v. Department of Transportation,* 561 Pa. 503, 751 A.2d 1130 (2000).

means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air. (Emphasis added.)

In *Love*, our Supreme Court addressed what was meant by "operation" as used in 42 Pa.C.S. § 8522(b)(1). That case involved an elderly woman who fell while using a portable step to assist passengers when exiting a city-owned van. Holding that the negligent placement of the portable step did not fall within the exception, our Supreme Court held that for a vehicle to be in operation, it had to be moving. It explained that "[T]o operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle.... Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle." 518 Pa. at 375, 543 A.2d at 533. (Emphasis in original.)

We have declined to apply the vehicle liability exception in cases that did not involve the actual movement of the vehicle, including in the area of public transportation, consistently holding that a passenger's act of alighting from the steps of a bus does not involve the "operation" of a bus for purposes of the vehicle liability exception to sovereign immunity. *See Bazemore v. Southeastern Pennsylvania Transportation Authority*, 657 A.2d 1323 (Pa.Cmwlth.1995) (passenger's injury sustained when tripping on bus steps while exiting did not come under vehicle liability exception); *Bottoms v. Southeastern Pennsylvania Transportation Authority*,

805 A.2d 47 (Pa.Cmwlth.2002) (passenger's fall while stepping from bus steps to curb because driver failed to kneel bus did not come under vehicle liability exception); *Miller v. Erie Metropolitan Transit Authority*, 152 Pa.Cmwlth. 64, 618 A.2d 1095 (1992) (vehicle exception was inapplicable where a bus passenger slipped on an object while alighting).

However, we do not require that the entire vehicle be in motion and a driver in the seat in order for a vehicle to be "in operation." This Court has found the vehicle liability exception to apply where an injury results from movement of part of the vehicle. In *Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa.Cmwlth. 533, 586 A.2d 1026 (1991), we held that an exiting passenger hit by and locked into the rear doors of the bus causing her permanent back injury fell within the vehicle liability exception. In *Cacchione v. Wieczorek*, 674 A.2d 773 (Pa.Cmwlth.1996), we held that the agency driver's failure to set a truck handbrake when he exited a vehicle resulting in the vehicle rolling backwards and causing property damage constituted "operation."

Mannella contends negligent lowering of a wheelchair ramp by a Port Authority bus driver falls within the exception because, though not moving at the time of the accident, the ramp did not cease operation once it was lowered as it only stopped long enough for a passenger to enter or exit the bus after which its motion resumed until the ramp was fully retracted.

While it may be true that the ramp's motion would begin again, as would the bus, neither the bus nor the ramp was moving at the time of Mannella's injury.[5]

---

**5.** Mannella also asserts that despite the fact that the bus was not actually moving at the time of the accident, under *Vogel v. Langer*, 131 Pa.Cmwlth. 236, 569 A.2d 1047 (1990), the Port Authority can still be liable because

the negligent act here occurred during a brief cessation of movement that occurred during acts normally related to the vehicle's operation. *Vogel* involved a motor vehicle accident that occurred when a bus driver temporarily

Recently, the United States District Court for the Eastern District of Pennsylvania in *McCree v. Southeastern Pennsylvania Transportation Authority*, 2009 WL 166660, No. 07–4908, *slip op.*, (E.D.Pa. 2009),[6] addressed an almost identical issue. In that case, a wheelchair-bound passenger sustained injuries while boarding a bus using a bus ramp when she attempted to drive her motorized scooter up the ramp and noticed a hump in the ramp that she could not get past. The bus driver told her to reverse and to again attempt to board by going up the ramp faster, but the motorized scooter fell off the ramp while she was reversing it.

In finding that the plaintiff's injuries did not fall within the exception to immunity, the District Court noted that under Pennsylvania law, to fall within that exception, the injury must result from movement by the vehicle or one of its moving parts. It went on to note that Pennsylvania courts applying *Love*, "have consistently held that 'operation' of a vehicle under Section 8522 does not apply when a passenger is merely entering into or alighting from a stationary bus." *Id.* at 5. (Citations omitted.)

As the District Court discerned, Pennsylvania courts have consistently held that to fall within the vehicle exception, the injuries must be caused by a moving vehicle or a moving part of that vehicle. Because neither the bus nor the wheel chair ramp was moving at the time of the acci-

dent, the vehicle liability exception did not apply. Accordingly, we reverse the trial court's order to deny the Port Authority's motion for summary judgment and enter summary judgment in its favor.

### ORDER

AND NOW, this 6th day of *October* 2009, the order of the trial court, dated December 20, 2008, is reversed and this matter is remanded to the Court of Common Pleas of Allegheny County with directions to enter summary judgment in favor of the Port Authority of Allegheny County.

Jurisdiction relinquished.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. Upon review of the alleged facts of this case and the decisions of our courts, I believe that the trial court did not err in denying the Port Authority of Allegheny County's (PAT) motion for summary judgment.

As recognized by the Majority, our Supreme Court in *Love v. City of Philadelphia*, 518 Pa. 370, 375, 543 A.2d 531, 533 (1988), stated that "to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are not the same as actually operating

stopped in traffic and waived a vehicle into an intersection where the vehicle then crashed into a truck. This Court found that unlike the parked vehicle in *Love,* the bus driver in the instant matter had applied the brakes and momentarily stopped in traffic but the bus remained in "operation" because temporary stops were acts normally related to the operation of a motor vehicle. Mannella contends that the facts of this case are similar to those in *Vogel* because the brief cessation of the movement of the ramp and bus was during its normal operation. *Vogel* is distinguishable because this bus was not momentarily

stopped in traffic but was fully stopped with brakes engaged and passengers entering and exiting. Moreover, *Vogel* has been held to be limited to the facts of that case. *Miller.* See also *White by Pearsall v. School Dist. of Philadelphia*, 553 Pa. 214, 718 A.2d 778 (1998).

6. Federal district court decisions may be persuasive, but are not binding authority. *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 908 A.2d 875 (2006).

that vehicle." Thus, the Supreme Court held that "according to the common and approved usage of the word 'operation', ... [g]etting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle." *Love,* 518 Pa. at 375, 543 A.2d at 533. Therefore, according to the Supreme Court, a vehicle is not in operation when a person is getting into or alighting from a vehicle.

While I agree that getting into or alighting from a vehicle using the steps are generally merely acts ancillary to the actual operation of that vehicle, the same cannot be said where a wheelchair ramp, that is an integral part of the operation of the bus, is involved. Obviously, a disabled person who requires the use of a wheelchair simply cannot exit a bus by going down the steps and through the doors. In order to board or exit a bus, a disabled person must rely upon the operation by the bus driver of a specialized wheelchair ramp.[1] The bus driver must fully deploy the ramp, which involves movement, wait for the passenger to board or exit, and then retract the ramp to its original position inside the bus, which again involves movement. Thus, like the moving doors on a bus, the wheelchair ramp is a moving part of the bus. *See Sonnenberg v. Erie Metropolitan Transit Authority,* 137 Pa. Cmwlth. 533, 586 A.2d 1026, 1028 (1991) (The opening and closing of bus door constitutes an operation of the bus because it is an act normally related to the "operation" of a bus. "The movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute 'operation.'").

I recognize that during the time that the disabled passenger is utilizing the ramp to physically board or exit the bus, the bus and the ramp are stationary; however, this short time period is a necessary part of the total "operation" of the ramp from when the ramp is deployed until it is retracted. As such, boarding or exiting a bus by means of a wheelchair ramp are not merely acts ancillary to the actual operation of the bus nor are they acts that are taken in preparation to operate the bus or acts taken at the cessation of operating the bus. Boarding or exiting a bus via a wheelchair ramp encompasses a series of movements and temporary stops in order to complete the entire process of operating the ramp.

In this case, Anthony Mannella was injured when he attempted to exit the bus via the wheelchair ramp. Mannella testified in his deposition that the wheelchair ramp was deployed in such a manner that the ramp was crooked, too steep, and uneven with the ground resulting in Mannella tipping over face first in his wheelchair off the end of the ramp. *See* Reproduced Record at 11a–32a. Thus, it was the physical operation of the wheelchair ramp that allegedly caused Mannella's injuries.

Moreover, this case is clearly distinguishable from the United States District Court's decision in *McCree v. Southeastern Pennsylvania Transportation Authority,* No. CIV. A. 07–4908, 2009 U.S. Dist. LEXIS 4803 (E.D.Pa. January 22, 2009), wherein the District Court determined that the passenger's complaints appeared to be more associated with the bus driver's actions in assisting or failing to assist the

---

1. I note that the Americans with Disabilities Act mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity ..." 42 U.S.C. § 12132. Therefore, public transportation authorities must properly equip their buses in order for the handicapped to have access to public transportation. In order to accomplish this mandate, numerous federal regulations have been promulgated. *See* 49 C.F.R. Parts 37 and 38.

passenger than with the physical operation of the bus. *McCree*, at \*22. In other words, in *McCree*, there was no evidence of a causal relationship between the bus's physical operation and the passenger's injury. The same cannot be said for this case. Mannella alleges that it was the actual physical operation of the wheelchair ramp that caused his injuries not any other action by the bus driver such as failing to assist Mannella in exiting the bus.

Accordingly, I would affirm the trial court's order denying PAT's motion for summary judgment.