**[J-59-2017] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| VICTORIA BALENTINE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF EDWIN OMAR MEDINA-FLORES, DECEASED, | : No. 119 MAP 2016<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court dated June 3,<br>: 2016 at No. 1859 CD 2015 Affirming the |
| Appellant | : Order of the Delaware County Court of<br>: Common Pleas, Civil Division, dated<br>: September 2, 2015 at No. 13-11179. |
| v. | :<br>: ARGUED: September 13, 2017 |
| | : |
| CHESTER WATER AUTHORITY, WYATT A. ROLAND, MICHAEL W. ROLAND AND CHARLES MATTHEWS, | :<br>:<br>: |
| | : |
| Appellees | : |

**CONCURRING OPINION**

**JUSTICE WECHT**                    **DECIDED: August 21, 2018**

I join the Majority's Opinion in full. Justice Benjamin Cardozo recognized that, "when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." B. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 150-51 (1921). I do not lightly join the Majority in abrogating *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988), mindful as I am of our general adherence to the principle of *stare decisis*, the importance of which Chief Justice Saylor extols in his dissent. However, against the critical importance of stability we must balance our duty as a court of last resort to refine or even abandon precedent when time and experience reveal its infirmity. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 351 (Pa.

2014) ("[W]e have long recognized that the doctrine of *stare decisis* is not a vehicle for perpetuating error, but a legal concept which responds to the demands of justice and, thus, permits the orderly growth processes of the law to flourish.") (internal quotation marks omitted); *Flagiello v. Pa. Hosp.*, 208 A.2d 193 (Pa. 1965) ("*Stare decisis* channels the law. . . . [It] does not demand that we follow precedents which shipwreck justice.").

As ably articulated by the Majority, the case at hand requires us to consider whether, as this Court held in *Love*, "motion," involuntary or otherwise, is implicit in "operation" for purposes of determining whether the vehicle liability exception to governmental immunity applies. *See* 42 Pa.C.S. § 8542(b)(1). "Motion," as such, appears nowhere in the statute, and the statute speaks in terms of "[t]he operation of any motor vehicle," not "operat*ing* any motor vehicle," *id.* (emphasis added), a distinction that strikes me as important. *See* Maj. Op. at 15 (distinguishing "the operation of" from the hypothetical requirement that a vehicle must be "*in* operation to impose liability") (emphasis added). As prior case law makes clear, and notwithstanding the confidence of this Court's prior pronouncements, the legal and standard dictionary definitions do not speak clearly.[1]

The "motion" requirement, therefore, is *Love*'s encrustation upon the motor vehicle exception. It has forced upon our courts a cramped definition of what "the operation" of a motor vehicle entails, and the consequences could not be more clear. As the Majority lays bare in its recitation of the competing cases relied upon by the lower courts and the parties in this case, precedents abound that interact uneasily and lead to results that defy common sense. *See* Maj. Op. at 9-12.

---

[1]     *See* Maj. Op. at 6-7 (excerpting and discussing the *Love* Court's reliance upon various dictionaries).

Like the Majority, I believe that the time has come for *Love* to join those surpassingly rare cases that prove so problematic in practice that they must yield to superior alternatives. For all the reasons stated by the Majority and more, I believe that our predecessor Justices Papadakos and Newman anticipated the problems we now must rectify, and that Justice Newman provided in her *Love* dissent the most cogent reading of the vehicle exception, charting our course to a more textually sound and intuitive approach to applying the exception. *See* Maj. Slip. Op. at 13-14 (quoting Justice Papadakos' dissenting observation in *Love* that, had it wanted to create a "motion" requirement, the General Assembly was capable of employing clearer language to that effect), 14 (quoting *Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127, 128-29 (Pa. 1999) (Newman, J., dissenting) ("'Operation' does not mean simply moving forward or backwards, but instead includes the decision[-]making process that is attendant to moving the vehicle.")).

Of particular interest is the effect of this Court's decision in *Mickle v. City of Philadelphia*, 707 A.2d 1124 (Pa. 1998). In *Mickle*, a city van's wheels fell off, causing injuries to passengers in that vehicle. *Id.* at 1125. We stated that "[t]he motor vehicle exception does not say that liability may be imposed only where the operator's *manner of driving* is negligent. Rather, it requires that the injury is caused *by a negligent act with respect to the operation of a motor vehicle*." *Id.* at 1126 (emphasis added). We rejected Philadelphia's immunity defense because the City's negligent maintenance and repair of the vehicle caused the wheels to fall off while it was in motion, notwithstanding that the negligent acts occurred independently of the vehicle's motion. *Id.* Thus, *Mickle* necessarily raised doubt about *Love*'s view that a municipality retains immunity when "acts ancillary to the actual operation of [a] vehicle" cause the injury. *Love*, 543 A.2d at 533. For *Mickle*'s denial of immunity to square with *Love*'s admonition regarding such

"ancillary" acts, we must conclude that maintenance performed upon government vehicles is not "ancillary" to that vehicle's operation, while simultaneously holding that operation occurs only when the vehicle is in motion. To so conclude defies logic. Thus, after *Mickle*, which followed both *Love* and the General Assembly's last amendment to the motor vehicle exception,[2] the exception encompasses "acts of negligence *with respect to the operation of a vehicle*," regardless of whether the vehicle was in motion at the time of the act of negligence upon which liability is premised. *Mickle*, 707 A.2d at 543 (emphasis added).[3]

---

[2]     *Mickle* post-dated *Love* by approximately ten years and the General Assembly's most recent amendments to Section 8542 by three years. This chronology resists Chief Justice Saylor's suggestion in dissent that we should glean from the legislature's failure to modify the "operation" requirement its tacit endorsement of *Love*'s interpretation. *See* Diss. Op. at 2 (citing, *inter alia*, 1 Pa.C.S. § 1922(4)). Be that as it may, to the extent *Mickle* contradicts *Love*, and for the reasons that follow I believe it does so substantially, we just as readily may find tacit approval in twenty subsequent years of legislative silence regarding *Love*'s complications after *Mickle*. The Dissent cites *Hunt v. Pa. State Police*, 983 A.2d 627, 637 (Pa. 2009), correctly for the proposition that this Court's construction of a given statute has been endorsed when the General Assembly revisits that statute but does not amend the relevant language. But *Hunt* also provides that we may infer indifference to, or approval of, our interpretation of a given statute from its long-standing silence, noting that "the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute." *Hunt*, 983 A.2d at 637. As noted, the legislature has had approximately twenty years to signal its disapproval of *Mickle* or to make sense of its inconsistency with *Love*.

[3]     In light of the numerous cases cited by the Majority, including in particular the discussion of *Mickle*, the Dissent does the Majority a disservice in suggesting that these amount to nothing more than a "bare assertion" of inconsistent and illogical post-*Love* case law. Diss. Op. at 3. Furthermore, the Dissent provides no account of how we should decide which precedent to stand by when, as with *Love* and *Mickle*, a court of last resort's cases reveal "accretions and observable inconsistencies" that preclude faithful reconciliation of the cases' disparate rationales. Instead, it casts aside the "tension" aptly identified by the Majority as merely "ostensible" and not "material." *Id*. There is nothing ostensible about the way *Mickle* contradicts *Love*'s critical premise, nor is it sufficient to cite *stare decisis* and stability in the law to discard the former in favor of the latter, especially when the former is of more recent vintage.

Two hypothetical examples further highlight the arbitrary and manifestly unjust results that *Love* might cause. Suppose a public employee driving a government vehicle causes a pile-up by coming to a screeching halt on the Pennsylvania Turnpike. If motion is necessary to operation, then the motor vehicle exception's application will hinge upon whether the first impact occurs immediately before or immediately after the government vehicle comes to a complete stop. Assuming the vehicle has come to a stop, passengers injured in a car that struck the halted government vehicle would be denied a remedy because the car was *stationary* at the time of impact. However, if operation includes *involuntary* motion, as in *Cacchione v. Wieczorek*, 674 A.2d 773 (Pa. Cmwlth. 1996), *see* Maj. Slip. Op. at 7-8, then anyone struck by the government's car following the impact would have a remedy. Similarly, imagine a government agent parks and abandons a government vehicle across railroad tracks. A crowded commuter train strikes the vehicle at high speed and derails catastrophically. Setting aside any laws peculiar to railroads, the government entity responsible for the vehicle that caused the derailment would have no liability to the train's passengers, simply because the vehicle was not moving at the moment of impact.

In ascertaining legislative intent we presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable," 1 Pa.C.S. § 1922(1). Moreover, as this Court has observed many times over, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Pa. Med. Soc. v. Dep't of Pub. Welfare of the Commonwealth*, 39 A.3d 267, 284 (Pa. 2012) (quoting *Piper Group, Inc. v. Bedminster Twp. Bd. of Supervisors*, 30 A. 3d 1083, 1092 (Pa. 2011)). Yet *Love* brazenly added a "motion" requirement that has, as its only statutory anchor, a questionably narrow definition of "operation," and is sustainable on the *Love* Court's account only by the employment of

dictionary definitions that offer no clear direction on this point. It is now clear that this addition confounded the common meaning of the legislature's chosen terminology viewed in the context of its intended effect, a tension that the courts have sought to resolve ever since with only limited success. Indeed, the numerous anomalies found in our and the Commonwealth Court's post-*Love* precedent provide powerful evidence that our case law has departed from both the intent of the General Assembly and common sense. In hindsight, it is clear that, albeit unintentionally, *Love* embodied an imprudent departure from the letter of the motor vehicle exception in pursuit of its spirit in violation of our rules of construction. *See* 1 Pa.C.S. § 1921(b).

Justice Felix Frankfurter once observed that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). A foolish consistency in rigid adherence to *stare decisis* despite a given precedent's failings or unintended consequences is the hobgoblin of bad law—and it is insufficient reason not to revise the law to reconcile legislative intent with lived experience. *Love* has nothing to do with it.

Justice Todd joins this concurring opinion.