**Darlene BOTTOMS, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Tom Tomlin.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 13, 2002.
Decided Aug. 14, 2002.

---

Marc F. Greenfield, Philadelphia, for appellant.

Joan A. Zubras, Philadelphia, for appellees.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Judge LEAVITT.

Darlene Bottoms (Appellant) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) entering summary judgment in favor of defendants Southeastern Pennsylvania Transportation Authority (SEPTA) and Tom Tomlin (Tomlin) in her negligence claim against them for damages. We affirm the trial court.

On December 7, 1998, Appellant was a passenger on a SEPTA bus, operated by Tomlin, which had stopped to discharge passengers. Appellant was the fourth or fifth person to exit the bus that was positioned approximately a foot and a half to two feet from the curb. Instead of stepping down into the street, Appellant took a "giant step over" directly to the curb and fell, rupturing her Achilles tendon and requiring surgery. Appellant filed a complaint against SEPTA and Tomlin (collectively SEPTA), alleging that the negligence, carelessness and or recklessness of SEPTA were the cause of her injury. Appellant maintains that she fell because the bus was too far from the curb and because the bus driver failed to kneel[1] the bus.

SEPTA filed a motion for summary judgment asserting that Appellant's claim was barred by sovereign immunity. The trial court agreed and granted SEPTA summary judgment. Appellant appealed to this court; her sole argument before this court is that the bus driver's failure to kneel the bus falls within the vehicle liability exception to sovereign immunity set forth in Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1). Thus, she believes the trial court erred.

SEPTA is an agency of the Commonwealth entitled to sovereign immunity. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986). This immunity, however, is not absolute. A party may proceed against a Commonwealth agency if it can establish that damages would have been recoverable under common law (or a statute creating a cause of action) had the injury been caused by a defendant not protected by sovereign immunity. 42 Pa. C.S. § 8522(a).[2] Additionally, the alleged negligent act must fall within one of the specifically enumerated exceptions provided by the legislature. Accordingly, for

---

1. The bus in question was equipped with a mechanism that would allow an operator to make the bus "kneel", *i.e.*, lower steps closer to the ground to allow greater passenger accessibility.

2. It states:
Liability imposed.—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.
42 Pa.C.S. § 8522(a).

Appellant to pursue her theory of negligence, she must first show that SEPTA did not act in accordance with the requisite standards of care and, second, that SEPTA's failure falls within one of the exceptions to sovereign immunity. *Miller v. Erie Metropolitan Transit Authority*, 152 Pa.Cmwlth. 64, 618 A.2d 1095 (1992). Appellant claims the vehicle liability exception. Assuming, *arguendo*, that SEPTA breached its duty of care to Appellant, we do not believe that her injuries resulted from an act that falls within the vehicle liability exception to sovereign immunity.

█ The Judicial Code enumerates specific exceptions to sovereign immunity. The vehicle liability exception applies to acts of a Commonwealth agency arising from:

The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle that is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b)(1). This scope of the vehicle liability exception has been carefully defined by our Supreme Court; generally, a stationary vehicle is not "in operation" within the meaning of 42 Pa.C.S. § 8522(b)(1). *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988).

In *Love*, an elderly woman fell as she was alighting from the steps of a city-owned van. In considering whether the vehicle liability exception applied to her claim against the City of Philadelphia, the Supreme Court noted that the statute did not define the word "operation." Accordingly, it construed the word according to common usage, holding as follows:

[T]o operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle. . . . Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of the vehicle.

*Love*, 518 Pa. at 375, 543 A.2d at 533 (emphasis in the original). Thus, "operation" has been strictly limited and does not include a stationary vehicle from which a passenger is alighting.

On the basis of the holding in *Love*, this Court has generally declined to apply the vehicle liability exception in cases that did not involve the actual movement of the vehicle. *See, e.g., First National Bank of Pennsylvania v. Department of Transportation*, 148 Pa.Cmwlth. 158, 609 A.2d 911 (1992) (holding that a vehicle alleged to have been improperly parked on a roadway was not in "operation" for purposes of the motor vehicle exception); *Brelish v. Clarks Green Borough*, 146 Pa.Cmwlth. 232, 604 A.2d 1235 (1992) (finding a local agency's[3] failure to establish safe school bus locations outside the motor vehicle exception). More to the point, this Court has consistently held that a passenger's act of alighting from the steps of a bus does not involve the "operation" of a bus for purposes of the vehicle liability exception to sovereign immunity. *See, e.g., Miller*, 618 A.2d 1095, (holding that the motor

---

**3.** The vehicle liability exception to governmental immunity is identical to the comparable exception to sovereign immunity. The Judicial Code states:

The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability*. The operation of any motor vehicle in the possession or control of the local agency. . . .

42 Pa.C.S. § 8542(b).

vehicle exception was inapplicable where a bus passenger slipped on an object while alighting).[4]

■ However, we do not require that the entire vehicle be in motion and a driver in the seat in order for a vehicle to be "in operation." Where an injury results from movement of part of the vehicle, this Court has found the vehicle liability exception to apply. In *Sonnenberg v. Erie Metropolitan Transit Authority*, 137 Pa.Cmwlth. 533, 586 A.2d 1026 (1991), we held that an exiting passenger hit by, and locked into, the rear doors of the bus causing her permanent back injury fell *within* the vehicle liability exception. In *Cacchione v. Wieczorek*, 674 A.2d 773 (Pa.Cmwlth.1996), *appeal denied*, 546 Pa. 684, 686 A.2d 1313 (1996), we held that the agency driver's failure to set a truck handbrake when he exited a vehicle, resulting in the vehicle rolling backwards and causing property damage, constituted "operation." Thus, the plaintiffs were permitted to pursue the City of Erie.

In sum, for the vehicle liability exception to apply, the vehicle owned or possessed by a Commonwealth or local agency must be *in operation*. To be in operation, generally the entire vehicle is moving, but a moving part, such as a bus door, has been found to be "in operation." In no case has

a plaintiff been successful in showing "operation" in the circumstances of entering or exiting a stopped vehicle.

■ Notwithstanding this clear body of precedent, Appellant contends that her circumstance involved the "operation" of a SEPTA bus. She does so by arguing that our holding in *Cacchione* expanded the motor vehicle liability exception in a way that contemplates her cause of action. We disagree.

In *Cacchione*, a truck driver failed to engage the handbrake on a parked truck, allowing it to roll backwards and crash into the home of the plaintiffs. The Court acknowledged that the failure to secure the handbrake satisfied the first requirement for a claim against a local agency, *i.e.*, establishing a common law or statutory cause of action. However, this finding had no relevance to the second requirement, *i.e.*, finding an exception to governmental immunity. On that point, we reasoned that because the movement of the entire truck caused the injury, the truck was "in operation" when it caused the injury. Our decision did not "expand" the meaning of "in operation" announced in *Love*.

In the case before us, the SEPTA bus was not "in operation."[5] It was not a movement of the bus itself that caused

---

**4.** *See also Bazemore v. Southeastern Pennsylvania Transportation Authority*, 657 A.2d 1323 (Pa.Cmwlth.1995) (wherein we held that a passenger's injury sustained from tripping on the steps when exiting the bus did not meet the vehicle liability exception); *Rubenstein v. Southeastern Pennsylvania Transportation Authority*, 668 A.2d 283 (Pa.Cmwlth.1995) (wherein we held that the bus driver's failure to recognize the ground was uneven at the point of departure, allegedly contributing to plaintiff's injuries, did not meet the vehicle liability exception); *Bennan v. Southeastern Pennsylvania Transportation Authority*, 698 A.2d 1362 (Pa.Cmwlth.1997) (wherein we held that injury caused upon exiting a bus,

allegedly from its overcrowding, did not meet the vehicle liability exception).

**5.** Appellant claims that because she weighs 300 pounds, Tomlin should have known to put the kneeling mechanism into play. As SEPTA noted, it is not the job of bus drivers to anticipate the needs of individual passengers, and Bottoms did not ask to have the device operated. She has many problems with the first requirement, *i.e.*, showing a breach of the defendant's duty of care to Appellant. However, we need not address those issues since her injury does not fall within the exception of 42 Pa.C.S. § 8522(b)(1).

Appellant her injury. She claims SEPTA's failure, and that of its employee, to put the kneeling mechanism into operation meets the vehicle liability exception. This calls for a reach we cannot make. The SEPTA bus was standing still, at a curb, discharging passengers; it was not "in operation" as required for the vehicle liability exception to apply. While we are sympathetic to the injuries sustained by Appellant, we are constrained by the dictates of the law. As our Supreme Court has stated:

> [W]e wish to emphasize that the issue here is not whether one may be tortiously injured entering or alighting from a stopped vehicle. Rather, the issue is the confining question of whether a political subdivision is immunized from suit when one is so injured, notwithstanding what may be the actual tort of their employees. The legislature, for reasons of policy, reasons we are not entitled to dilute for sympathy or even outrage at specific instances of blatant tort, has decided that such an immunity does exist, and we must abide, sometimes leaving dreadful injuries, negligently inflicted, uncompensated.
>
> The juridical concept that where there is a wrong there must be a right often depends on the wisdom and large responsibility of the legislature. What rights for what wrongs are generally their prerogative and apportioned in the exercise of their many responsibilities and competing needs. Their task, like ours, is never easy. However, it is our duty to respect and enforce their judgment, even with heavy hearts in particular instances.

*Love,* 518 Pa. at 375–376, 543 A.2d at 533 (citation omitted).

For these reasons, we affirm the trial court's grant of summary judgment to SEPTA.

## ORDER

AND NOW, this 14th day of August, 2002, the November 14, 2001 order of the Philadelphia County Court of Common Pleas in the above-captioned matter is hereby affirmed.