Justices TODD and ORIE MELVIN join this opinion.

Janet ROYAL, Appellant

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2010.
Decided Dec. 10, 2010.

for invalidating the Ordinance under some of the other legal theories offered by appellants to the trial court, but which the trial court did not reach after finding preemption. Those theories are not before us here. The question before us is conflict preemption, and consideration of whether the municipality pursued the best means to accomplish its stated purpose is not a salient factor in that analysis. Whether one enjoys cigars or not, for conflict preemption analysis, a cigar is just a cigar.

11. I note that the U.S. Supreme Court recently accepted review in three cases involving the doctrine of preemption: *Bruesewitz v. Wyeth, Inc.*, (argued October 12, 2010); *Williamson v. Mazda Motor of Am., Inc.*, (argued Nov. 3, 2010), and *Chamber of Commerce v. Whiting*, (argued Dec. 8, 2010). *Whiting*, in particular, raises a conflict preemption issue similar to the one before us. The two questions relevant here on which the Court granted certiorari are: "[w]hether the Arizona statute, which requires all employers to participate in a federal electronic employment verification system, is preempted by a federal law that specifically makes that system voluntary" and "[w]hether the Arizona statute is impliedly preempted because it undermines the comprehensive scheme that Congress created to regulate the employment of aliens."

Christopher S. Froba, Conshohocken, for appellant.

Joan A. Zubras, Philadelphia, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Janet Royal appeals an order of the Court of Common Pleas of Philadelphia County (trial court) entering summary judgment in favor of Southeastern Pennsylvania Transportation Authority (SEPTA). Finding no error in the trial court's determination that SEPTA was immune from liability for injuries Royal sustained as she exited a SEPTA bus, we affirm.

On December 27, 2006, Royal boarded a SEPTA bus at 55th and Chestnut Streets in Philadelphia. Realizing she had boarded the wrong bus, Royal requested the driver to let her off at the next stop. As she prepared to leave the bus, Royal asked the bus driver to "kneel" the bus as he did when she first boarded.[1] After waiting a short time, and believing that the driver had heard and complied with her request, Royal left the bus. Unbeknownst to Royal, the driver had not kneeled the bus. Royal, who uses a cane to walk, fell as she left the bus, sustaining neck and back injuries.

---

1. "Kneeling" a bus involves lowering either the front end or the entire bus to make ingress and egress easier for passengers.

Royal initiated a tort action against SEPTA, alleging that the bus driver had been negligent in failing to kneel the bus as she had requested. After discovery, SEPTA filed a motion for summary judgment asserting that Royal's claim was barred by sovereign immunity. The trial court granted SEPTA's motion, holding that failure to kneel a stopped bus does not constitute operation of the bus for purposes of the motor vehicle exception to sovereign immunity. Royal now appeals to this Court.

On appeal,[2] Royal's sole argument is that the bus driver's failure to kneel the bus, after she specifically requested he do so, constituted negligent operation of a motor vehicle, thereby triggering the vehicle liability exception to sovereign immunity set forth in what is commonly referred to as the Sovereign Immunity Act, 42 Pa. C.S. §§ 8521–8522.[3] Royal contends that her unheeded request that the bus be lowered distinguishes this case factually from those cases where sovereign immunity was found to bar a claim against SEPTA. We disagree.

■■■ It has long been established that SEPTA is an agency of the Commonwealth and, as such, is entitled to sover-

eign immunity. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986). However, this immunity is not absolute. *Bottoms v. Southeastern Pennsylvania Transportation Authority*, 805 A.2d 47, 48 (Pa. Cmwlth.2002). A Commonwealth party's sovereign immunity is waived when (1) the alleged act is a negligent act for which damages would be recoverable under the common law or by statute, and (2) the act falls within one of the specifically enumerated exceptions listed in 42 Pa.C.S. § 8522(b). *Mannella ex rel. Mannella v. Port Authority of Allegheny County*, 982 A.2d 130, 132 (Pa.Cmwlth.2009).

■■■ In the present case, Royal contends that SEPTA's sovereign immunity was waived under the motor vehicle exception in Section 8522(b)(1) of the Sovereign Immunity Act, which provides:

(b) Acts which may impose liability.— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

**2.** This Court's standard of review of a grant of summary judgment is whether the trial court has committed an error of law, and our scope of review is plenary. *Cochrane v. Kopko*, 975 A.2d 1203, 1205 (Pa.Cmwlth.2009). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Farabaugh v. Pennsylvania Turnpike Commission*, 590 Pa. 46, 52 n. 3, 911 A.2d 1264, 1267 n. 3 (2006). This Court must view the evidence in the light most favorable to the nonmoving party, but all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Cochrane*, 975 A.2d at 1205.

**3.** Royal's brief bases her claim upon what is popularly referred to as the Political Subdivi-

sion Tort Claims Act, 42 Pa.C.S. §§ 8541– 8542, which provides immunity to political subdivisions. However, as noted by the trial court judge, SEPTA is a Commonwealth agency, not a political subdivision. As such, SEPTA's immunity is grounded in the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8522. Therefore, the exceptions to sovereign immunity contained in 42 Pa.C.S. § 8522(b) control. Even though the exceptions to immunity in each act are nearly identical, and courts regularly rely upon cases addressing the definition of "operation" as it is used in either act interchangeably, our discussion will refer solely to Section 8522, as that is the proper statutory provision implicated by the facts in this case.

(1) Vehicle liability.—*The operation of any motor vehicle in the possession or control of a Commonwealth party.* As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b)(1) (emphasis added). The exception for vehicle liability, as is the case for every exception to sovereign immunity, is to be narrowly construed. *Love v. City of Philadelphia,* 518 Pa. 370, 374, 543 A.2d 531, 532 (1988). Thus, when applying the exception to sovereign immunity, courts are required to construe narrowly the crucial terms in the exception. *Id.* In this case, the crucial term in the motor vehicle exception that we are called upon to construe is "operation."

While the statute itself does not define "operation," our Supreme Court has provided guidance. In *Love,* the Supreme Court held that

> to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle.

*Love,* 518 Pa. at 375, 543 A.2d at 533. (emphasis in original). Generally, a stationary vehicle is not considered to be in operation. *Bottoms,* 805 A.2d at 49. However, the movement of a part of, or an attachment to, a vehicle may result in the vehicle being considered in operation if the movement of that part is incidental to the normal operation of the vehicle. *See, e.g., Sonnenberg v. Erie Metropolitan Transit Authority,* 137 Pa.Cmwlth. 533, 586 A.2d 1026 (1991) (bus doors). On the other hand, in *Swartz v. Hilltown Township Volunteer Fire Co.,* 721 A.2d 819 (Pa.Cmwlth. 1998), this Court held that the vehicle ex-

ception did not apply when a five-way diverter valve fell off the back of a Township fire engine causing a car accident. Stated otherwise, the movement of a vehicle, or its parts, that is merely ancillary to that vehicle's normal operation does not trigger the motor vehicle exception. *Swartz,* 721 A.2d at 822.

Royal contends that this Court has expanded the definition of "operation" to include both the affirmative act of kneeling a bus, as well as the failure to kneel a bus upon request. In support of her position Royal relies upon two cases: *Sonnenberg* and *Cacchione v. Wieczorek,* 674 A.2d 773 (Pa.Cmwlth.1996).

In *Sonnenberg,* the plaintiff was leaving a bus operated by the Erie Metropolitan Transit Authority when the doors suddenly closed on her, causing physical injury. We held that immunity was waived because the closing of bus doors by the bus driver was an act normally related to the operation of a bus. *Sonnenberg,* 586 A.2d at 1028.

*Sonnenberg* is distinguishable from the present case. The plaintiff in *Sonnenberg* was injured by the physical movement of the doors, while in this case Royal was injured after stepping down from a bus that was standing still. Because no movement of the bus or its parts caused Royal's injuries, her reliance upon *Sonnenberg* is misplaced.

Royal's reliance on *Cacchione* is also misplaced. In *Cacchione,* the driver of a city-owned truck failed to engage the handbrake, after parking it on a hill. After the driver left the truck, with its engine running, it rolled backwards into Cacchione's home. This Court ultimately held that the facts established the truck was in "operation" at the time of the accident. *Cacchione,* 674 A.2d at 776. Royal contends that *Cacchione* stands for the propo-

sition that the failure to do a specific act such as engaging a handbrake, or in her case kneeling a bus, results in a vehicle being in operation for purposes of Section 8522(b). *Cacchione* did not establish liability for a driver's failure to act. In fact, in *Cacchione* we expressly stated that "[b]ecause the injury in this matter was caused by the *movement of the entire truck*, the truck was in operation at the time of the injury." *Id.* at 776 (emphasis added). *Cacchione* did not expand the definition of "operation" in *Love.* In sum, because Royal's injuries were not caused by any physical movement of the bus, *Sonnenberg* and *Cacchione* are not controlling here.

Persuasive, and indeed controlling, authority may be found in *Bottoms* and *Mannella.* In *Bottoms*, the plaintiff ruptured her Achilles tendon when she stepped off a SEPTA bus that had not been kneeled. This court reiterated the well established requirements that a vehicle, or a part of it, must be in motion for it to be in "operation," and that stationary vehicles from which passengers are alighting are therefore not in operation. *Bottoms*, 805 A.2d at 49.

Similarly, in *Mannella* a bus driver was alleged to have negligently deployed a wheelchair ramp unevenly with the ground, which caused the plaintiff to fall out of his wheelchair, even though the ramp was not in motion. We once again noted that Pennsylvania courts have consistently held that to meet the vehicle ex-

ception, any injuries must be caused by a vehicle, or a part of a vehicle, which is in motion. *Mannella*, 982 A.2d at 134. Thus, while the wheelchair ramp in *Mannella* was a moving part of the bus, much like the kneeling system on a SEPTA bus, the vehicle exception did not apply because the plaintiff, like Royal, was injured when the bus and the ramp were not in motion. *Id.*

The facts show that the SEPTA bus in this case was not in "operation" as that term has been judicially defined.[4] The bus was stopped to discharge Royal and all of its parts and attachments were motionless. No movement of the bus, part of the bus, or attachment to the bus caused Royal's injury. Therefore, as a matter of law, the bus was not in operation at the time of Royal's fall and the vehicle liability exception to sovereign immunity was inapplicable.[5]

For all of the foregoing reasons, we affirm the trial court's grant of summary judgment to SEPTA.

### *ORDER*

AND NOW, this 10th day of December, 2010, the order of the Court of Common Pleas of Philadelphia County, dated October 1, 2009, in the above-captioned matter is hereby AFFIRMED.

---

4. Royal maintains that her case is distinguishable from *Bottoms* because, unlike the plaintiff in *Bottoms*, Royal requested the bus driver to kneel the bus. Royal's argument is premised on this Court's statement in footnote five of *Bottoms*, noting that "Bottoms did not ask to have the [kneeling] device operated." *Bottoms*, 805 A.2d at 50 n. 5. This footnote simply referred to the facts in that case. It did not mean that passengers who specifically request a bus be kneeled can assert the motor vehicle exception to sovereign immunity.

Such a request, or its absence, is not dispositive of whether the bus was "in operation" at the time the plaintiff was injured.

5. We need not specifically address Royal's argument that the bus driver breached a duty of care. Any inquiry into the elements of her negligence claim is foreclosed by our determination that none of the statutory exceptions to sovereign immunity are available to her.