# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott R. Monger and Howard S. Morris, :
                     Appellants   :
                                 :
              v.                : No. 690 C.D. 2015
                                   : Argued: October 5, 2015
Upper Leacock Township          :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: January 7, 2016**


Before this Court is the appeal of Scott R. Monger (Developer Monger) and Howard S. Morris (Developer Morris), (collectively, Developers), from the August 28, 2014 Order of the Court of Common Pleas of Lancaster County (trial court) granting Upper Leacock Township's (Township) Motion for Summary Judgment and dismissing with prejudice the complaint filed by the Developers. We affirm.

Developers' complaint was filed in June 2012 and asserted counts for breach of express and implied contract and promissory estoppel, premised upon an allegation that the Township breached its implied duty of good faith and fair dealing during its review of Developers' 2007 land use application for a proposed development. (Complaint, Reproduced Record (R.R.) at 1a-12a.) The Township filed preliminary objections in July 2012, which were denied without prejudice.

(R.R. at 27a-30a, 64a.)    Following discovery, Township filed a Motion for Summary Judgment, in March 2014.  (R.R. at 85a-86a.)  Following oral argument held on May 19, 2014, the Trial Court granted the Township's motion.  (R.R. at 352a.)    In September 2014, the Developers appealed to Superior Court; the Township argued that the appeal should be transferred to this Court due to its jurisdiction and expertise with matters involving land use appeals and the Municipalities Planning Code (MPC),[1] and Superior Court transferred the case to this Court.[2]

In August 2007, Developers, along with another individual, became party to an agreement of sale to purchase real estate consisting of 71 acres of land in the Township.  Their obligation to purchase was contingent upon obtaining land use approval by the Township for their intended use plan of development. Subdivision and land development procedures, requirements and standards are set forth in the Township's Subdivision and Land Development Ordinance (SALDO), and Sections 301 to 304 of the SALDO set forth three stages in the procedure for approval of land development plans: (1) pre-application review; (2) preliminary plan application; and (3) final plan application.  (R.R. at 135a-141a.)    Pursuant to Section 303.05 of the SALDO, compliance with conditions of preliminary plan approval must be attained within six months of the Board of Supervisors' (Board) action, or the Township's action on the plan shall be a disapproval, unless the Board grants a waiver by extending the effective time period.  (R.R. at 138a.)

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[2] The Superior Court found that Developers' claims lay in the exclusive jurisdiction of the Commonwealth Court, as they were "inextricably intertwined with the land use application process, which is governed by Pennsylvania statute and local ordinance."  (Pa.Super., No. 1623 MDA 2014, filed April 28, 2015, Supplemental Reproduced Record (SRR) at 101b.)

In August 2007, Developers first met with Township Manager Michael Morris (Township Manager) to discuss the proposed project. Township Manager informed Developers of an informal process whereby prospective developers would attend a "pre-application" meeting with Township Manager, the department heads and other staff. (Complaint, R.R. at 2a-3a.) Section 302 of the SALDO indicates that applicants are "urged, but not required, to discuss possible development sites and plans with the Planning Commission prior to the submission of the Preliminary or Final Plans" and states that the purpose of the pre-application meeting process is to give applicants an opportunity to receive the advice and assistance of the Planning Commission. (SALDO, R.R. at 136a.) Developers attended a series of meetings with Township Manager, Water and Sewer Department heads, an engineer, and a zoning officer and allege that they spent substantial time and financial resources to address concerns articulated by Township staff during these meetings.

Developers' land use application was submitted in November 2007 and included a request for a waiver from Section 602.14 of SALDO, which establishes the maximum length of the cul-de-sac streets. (Application for Consideration of a Waiver, R.R. at 19a-21a.) On January 7, 2008, the Board voted to approve the request for waiver with respect to Developers' proposed industrial tract, but denied the request for waiver with respect to the maximum length of the cul-de-sac street for the proposed residential tract, due to its concerns with traffic issues. (R. Exhibit 5, R.R. at 147a-148a.) Developers revised the land use plans to change the design of the access road for the residential tract from a cul-de-sac to a circle, purportedly upon the advice of the Township Manager. The revised plans were submitted on January 16, 2008, and on April 3, 2008, Developers requested

3

and were granted an extension until May 1, 2008, to comply with the conditions of plan approval. (R. Exhibits 7, 8.) To meet the May 1 deadline, Developers had until April 23, 2008 to submit the revisions or to request another extension for compliance; however, Developers failed to submit revisions and on April 24, 2008 they informed the Township that they would not be applying for an extension on the project. (R. Exhibits 10, 11.) The Board thereupon voted to disapprove the project pursuant to Section 303.05 of SALDO, as Developers had neither submitted a revision nor requested an extension and had advised the Board that they would not be applying for another extension; on May 2, 2008, a written decision denying the land use application was mailed to Developers. (*Id.*) Developers had 30 days from May 2, 2008, to appeal the adverse land use decision to the court of common pleas under Section 1002-A(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11002-A(a), and did not appeal.

On June 27, 2012, Developers filed their complaint. As aptly described by the Superior Court in its decision to transfer the case to this Court:

> The land use application process undisputedly was governed by the Township's Subdivision and Land Development Ordinance (SALDO). In connection with their November 5, 2007 application, Appellants sought waivers of certain SALDO requirements. The Township issued a conditional approval of the plan granting one waiver but denying another, which had the effect of requiring Appellants to revise their plan to satisfy the relevant ordinance. Thereafter, Appellants submitted a revised plan and requested an extension from the SALDO-prescribed time period for complying with the Township's conditions. The extension was granted, but Appellants failed to satisfy the conditions before the expiration of the extended deadline and did not request a second extension. Thus, on May 1, 2008, after the expiration of the time limit for establishing compliance,

4

> the Township voted to disapprove the plan…Appellants took no other action in furtherance of seeking review of the Township's decision.

(Pa.Super., No. 1623 MDA 2014, filed April 28, 2015, Supplemental Reproduced Record at 102b-103b.)

Before the Trial Court, Developers asserted that their claims were based upon the proposition that the parties entered into a contract when they submitted their application, obligating the Township to act in good faith in reviewing that application. The Trial Court entered summary judgment on the basis that Developers had failed to appeal the Township's land use decision to the Court of Common Pleas within thirty days of the Township's adverse decision, further noting that the "procedures for a land use appeal in the MPC are 'the *exclusive* mode for securing review of *any* decision rendered pursuant to Article IX of the MPC.'" (Trial Ct. Op. at 7 (quoting Section 1001-A of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11001-A, emphasis added by the Trial Court).) Citing this Court's decision in *Koresko v. Farley*, 844 A.2d 607, 615 (Pa. Cmwlth. 2004), the Trial Court determined that subdivision review is included in Article IX of the MPC and accordingly, the MPC is the exclusive vehicle for challenging the validity of a subdivision or land development plan. The Trial Court noted Developers' contention that their claims were not appeals of the land use decisions but rather related to the Township's conduct during the time before and after the Developers had submitted their land use applications, but stated that the Developers had failed to cite "even one case that has held that submitting a land use application creates either an express or implied contract with the reviewing municipality, which takes it out of the realm of the MPC." (Trial Ct. Op. at 8.)

5

Pursuant to Section 501 of the MPC, 53 P.S. §10501, the governing body (here, the Board) of each municipality is granted the power to regulate subdivisions and land development within the municipality by enacting a SALDO. The MPC expressly governs appeals of land use decisions, as follows:

> **All appeals from all land use decisions rendered pursuant to Article IX shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision** as provided in 42 Pa. C.S. §5572 (relating to time of entry of order) or, in the case of a deemed decision, within 30 days after the date upon which notice of said deemed decision is given as set forth in section 908(9) of this act. **It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions.**

53 P.S. §11002-A(a) (emphasis supplied). In *Koresko*, our Court found the MPC to be the exclusive vehicle for challenging the validity of actions concerning a subdivision, stating:

> Section 1001-A of the MPC, added by the Act of December 21, 1998, P.L. 1329 provides "the procedures set forth in this article shall constitute the *exclusive mode for securing review* of any decision rendered pursuant to Article IX or deemed to have been made under this act." 53 P.S. §11001-A (emphasis added.) Subdivision review is included in Article IX. *See*, 53 P.S. §10909.1(b)(2), added by the Act of December 1988, P.L. 1329. Accordingly, the trial court did not err in holding that the **MPC provided the exclusive vehicle for challenging the validity of the subdivision.**

*Koresko*, 844 A.2d at 615 (emphasis supplied).

6

Before this Court,[3] Developers assert that they suffered losses as a result of the conduct, representations, and assurances of the Township both before and during the application process. Nevertheless, Developers acknowledged that during the pre-application process they were informed and understood that the project may not be favorably received by neighboring property owners, special interest groups or by the government agencies involved in the approval process, and that the authority to approve or deny a land use application rested solely with the Board and not with the Township Manager, the Planning Commission or any other Township official. (R.R. at 107a, 119a.) Developers contend that their appeal is not an appeal of the Board's land use decision but rather relates to the conduct of Township personnel before and after their land use application was submitted; they assert that their claims of breach of both express and implied contract and promissory estoppel should lie regardless of the outcome of the Township's land use decisions. Developers seek damages because, they assert, the Township breached its implied contractual duties of good faith and fair dealing in the relationship that arose by virtue of the course of events, and because the Township made promises that induced them to take actions ultimately to their detriment.

---

[3] Our standard of review of a trial court's order granting summary judgment is *de novo*, and our scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035.2(1); *Pyeritz*, 32 A.3d at 692; *Royal v. Southeastern Pennsylvania Transportation Authority*, 10 A.3d 927, 929 n.2 (Pa. Cmwlth. 2010). We review the record in the light most favorable to the nonmoving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *LJL Transportation, Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009); *Royal*, 10 A.3d at 929 n.2.

7

Here, it is undisputed that Developers were aware that they had the right to immediately appeal the Board's decision based on their claim that the Township failed to consider the application in good faith. (R.R. at 112a, 125a.) Moreover, Developers concede that their claims are based on the Board's decision denying their plan. While Developer Morris testified that Developers' claims were based upon their having proceeded in good faith to spend a substantial amount of money relying upon things said to Developers by Township Manager, he also stated that the Board itself did not act in good faith – he indicated his belief that the Board did not want the project to go through, and that this was "not necessarily related to anything we submitted." (R.R. at 113a.) Developer Morris was asked whether Developers were not bringing the lawsuit because of the denial of their land use application and he replied, "I don't think that's correct. I mean, it is because of the denial. If the project had been approved after we listened to the [Township Manager] and spent our money, we wouldn't be here with a lawsuit." (*Id.*) Developer Morris was questioned as to why Developers did not appeal the denial of the land use application and he testified, "it was obvious…it wasn't going to go anyplace" and indicated that Developers did not evaluate whether there was any basis for appealing the land use application denial and did not know whether they would have had a basis for it or not. (*Id.*) Developer Monger indicated that he was aware that Developers could have appealed the Board's decision on the basis that the Board was not acting in good faith, but did not do so. (R.R. at 125a.)

Before this Court, Developers contend that they attempted, during the initial pre-application meeting and at a subsequent meeting, to alert the Township as to their concerns about the financial impact on profitability of off-site improvements that may be required by the Township; Developers point to a letter

8

to Township Manager submitted by their engineer, which addresses their concerns about possible Township demands for expensive off-site improvements, traffic study issues, and water line funding. (R.R. at 14a.) This letter requests, *inter alia*, that the Township consider assisting with the funding of required water lines for the proposed project; however, the letter also acknowledges that Developers "understand the [Township] staff's concerns expressed at our meeting about burdening the taxpayers in the Township with the cost of bringing water to the [ ] site." (R.R. at 15a.)

We find that Developers' claims are inherently intertwined with the land development procedures established by the Township's SALDO, and as such, Developers were required to bring any claims arising therefrom within thirty (30) days of the denial of their application as required by the MPC. Clearly, the Township has a duty of good faith in the review and processing of Developers' land use application. *See Highway Materials v. Board of Supervisors*, 974 A.2d 539 (Pa. Cmwlth. 2009); *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1977). However, in each of these cases, a timely appeal to the court of common pleas was made, pursuant to the MPC, for a determination of whether good faith and fair dealing had been exercised by the municipality during the application process. As noted by the Trial Court, no court in this Commonwealth has permitted such claims independent of the land use appeal process, and we decline to do so here. Accordingly, we affirm.


_____
**JAMES GARDNER COLINS, Senior Judge**


9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott R. Monger and Howard S. Morris,  :
                Appellants    :
                                 :
                v.           : No. 690 C.D. 2015
                                 :
Upper Leacock Township       :

## O R D E R

AND NOW, this 7th day of January, 2016, the order of the Court of Common Pleas of Lancaster County in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**