IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Souderton Charter School          :
Collaborative                 :
                              :   No. 237 C.D. 2021
               v.         :
                              :   Argued: November 15, 2021
Souderton Area School District,     :
                Appellant    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: January 3, 2023

Souderton Area School District (District) appeals from the February 22, 2021 order of the Court of Common Pleas of Montgomery County (trial court) granting summary judgment in favor of Souderton Charter School Collaborative (Charter School) and directing the removal of two conditions unilaterally imposed by the District on the Charter School during the renewal process. Upon review, we affirm.

## I. Factual and Procedural History

The relevant facts are not in dispute. The Charter School, which is located within the District, received its charter in 2000 from the State Charter Appeal Board (CAB), after its application was denied by the District in 1997.[1] Since then, the District

---

[1] The District denied the Charter School's original charter application on the grounds that it was unclear how to ensure that the Charter School's health insurance plans would have the same conditions as the District's plan unless the Charter School's employees were on the District's plan. **(Footnote continued on next page…)**

renewed the Charter School's charter on May 27, 2004, December 22, 2009, and December 18, 2014. (R.R. at 327-340.) For twenty years, the Charter School has been one of the most successful public schools in Pennsylvania, winning numerous awards and consistently meeting or exceeding statewide goals and averages on standardized tests. (R.R. at 925-934.) The Charter School's scores are well above state averages and exceed the Statewide 2030 Goals, as well as the District's scores. *Id.* In 2019, the Charter School received an Act 82[2] Building Level Profile of 86.2, a score higher than all District middle schools and five of six elementary schools and 11.4 points higher than the average of 74.8 of all K-8 schools in its chartering district. (R.R. at 936.)

With its existing charter due to expire, the Charter School submitted a written renewal request to the District in July 2019. The Charter School responded to written requests for information and documents and to audits requested by the District. (R.R. at 9.) According to the District, that process ultimately revealed that the Charter School did not provide its employees the same health care benefits as District employees[3] and that only 14% of the Charter School's educators possessed a Pennsylvania instructional certificate and 38% did not possess a Level II certificate even though they had worked six years on a Level I certificate. The District determined that the Charter School was in violation of section 1724-A(a) and (d) of the Charter

---

(Reproduced Record (R.R.) at 314.) The CAB rejected that argument and awarded the Charter School a charter. *Id.* at 324-25.

[2] Act of June 30, 2012, P.L. 614, No. 82.

[3] The District never raised this healthcare issue during any other charter renewal until now.

School Law (CSL),[4] and thus out of compliance with its charter.[5] The District approved the charter renewal by resolution at its December 19, 2019 school board meeting, subject to the following unilaterally imposed conditions relating to healthcare benefits of Charter School employees and teacher certification requirements:

> (a)     In accordance with [s]ection []1724-A(d) of the [CSL], effective September 1, 2020, the Charter School shall offer its employees the same healthcare benefits as set forth in the [] District's health benefits plans. . . .   For purposes of this condition, the same healthcare benefits require that deductibles and patient

---

[4] The CSL is part of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of June 19, 1997, P.L. 225, 24 P.S. §§1-101 – 27-2702.  The CSL may be found at 24 P.S. §§17-1701-A – 17-1752-A.  In relevant part, section 1724-A(a) and (d) of the CSL provides:

> (a) The board of trustees shall determine the level of compensation and all terms and conditions of employment of the staff except as may otherwise be provided in this article. At least seventy-five per centum of the professional staff members of a charter school shall hold appropriate State certification.
>
> * * *
>
> (d) Every employe of a charter school shall be provided the same health care benefits as the employe would be provided if he or she were an employe of the local district. The local board of school directors may require the charter school to provide the same terms and conditions with regard to health insurance as the collective bargaining agreement of the school district to include employe contributions to the district's health benefits plan. The charter school shall make any required employer's contribution to the district's health plan to an insurer, a local board of school directors or a contractual representative of school employes, whichever is appropriate to provide the required coverage.

24 P.S. §17-1724-A(a) and (d).

[5] The charter mandated that the Charter School "shall operate the charter school in accordance with the provisions of the [CSL] 24 P.S. §§17-1701-A – [17-1752-A] and any applicable amendments thereto enacted during the term of this charter and any regulations or standards applicable to charter schools. . . ."  (R.R. at 22-23.)

payments be identical to the plans provided in the description attached. . . .

(b) Consistent with the requirements of [s]ection []1724-A[(a)] of the [CSL], at least 75 percent of the Charter School's professional staff must hold appropriate state certification. For the purposes of this condition to the grant of the charter to [the Charter School] by September 1, 2020,[] 75 percent [] of professional staff member[s] must meet the same requirements as professionals in the [] District or any other regular public school district in the Commonwealth of Pennsylvania and achieve Level II certification in the event that the professional staff member worked six years on a Level I certificate. In other words, those individuals identified in the certification audit . . . or any other employee similarly situated now or in the future would have to fulfill the same requirements for certification as if the individual were employed at the District.

(R.R. at 37-38.)

The 2019 resolution required the Charter School to correct those deficiencies, but nevertheless renewed and extended the Charter School's charter for an additional five-year period. (R.R. at 38.) In response, the Charter School disputed the unilateral imposition of the conditions on its 20-year old charter, claiming that the conditions go beyond that which is required by the CSL, and that it never received notice that any conditions would be considered at the December 19, 2019 school board meeting when it approved the charter renewal. The Charter School informed the District that it would not agree to the conditions and eventually filed an action in the trial court on January 1, 2020, seeking, *inter alia*, a judicial declaration that the

4

employee healthcare and teacher certification conditions in the charter renewal are unenforceable.

After the close of discovery,[6] both parties moved for summary judgment.[7] The trial court granted the Charter School's motion and denied the District's cross-motion for summary judgment. The trial court struck the employee healthcare and teacher certification conditions of the charter renewal and remanded the matter for the District to provide the Charter School with a charter that did not contain those conditions or otherwise amend the charter.

Relying on *Discovery Charter School v. School District of Philadelphia*, 166 A.3d 304 (Pa. 2017) (*Discovery*), the trial court held that the charter was legally binding on the District and the Charter School under section 1720-A(a) of the CSL,[8] and that nothing in the CSL permitted the District to unilaterally amend the charter as

---

[6] The District admitted in discovery responses that the 2019 renewal amends the Charter School's charter.

[7] Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Royal v. Southeastern Pennsylvania Transportation Authority*, 10 A.3d 927, 929 n. 2 (Pa. Cmwlth. 2010); s*ee also* Pa. R.Civ.P. 1035.2.

[8] Section 1720-A(a) provides, in this regard:

> (a) Upon approval of a charter application under section 1717-A, a written charter shall be developed which shall contain the provisions of the charter application and which shall be signed by the local board of school directors of a school district, by the local boards of school directors of a school district in the case of a regional charter school or by the chairman of the appeal board pursuant to section 1717-A(i)(5) and the board of trustees of the charter school. This written charter, when duly signed by the local board of school directors of a school district, or by the local boards of school directors of a school district in the case of a regional charter school, and the charter school's board of trustees, shall act as legal authorization for the establishment of a charter school. This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees.

24 P.S. §17-1720-A(a).

a condition of renewal. The trial court reasoned that section 1729-A of the CSL[9] authorizes a school district to either "revoke" or "not renew" a charter based on an alleged violation of any conditions, standards or procedures contained in the written charter. Based on this statutory and decisional law, the trial court concluded that the District did not have the authority to unilaterally amend the charter. The trial court went on to decide whether the two conditions imposed were independently illegal. It held that, even assuming the District had the power to unilaterally amend the charter, the healthcare amendment, requiring the Charter School to have identical deductibles and co-pays to the District's plans, violated the CSL. Relying on the CAB's decision in *Gillingham Charter School v. Pottsville Area School District*, CAB Docket No. 2016-11,[10] the trial court concluded that healthcare coverage does not have to be exactly the same between the District and the Charter School; rather, it only needs to be substantially similar or within "the same classes of coverage." (Trial court op., 5/4/21, at 8.) As to the teacher certification condition that 75% of the Charter School's professional staff members must meet the same teacher certification requirements as professionals in the District and achieve a Level II certification after working 6 years

---

[9] Section 1729-A, pertaining to causes for nonrenewal or termination of a charter, authorizes a school district "[d]uring the term of the charter or at the end of the term of the charter" to "revoke or not to renew the charter" based on certain enumerated factors, including, *inter alia*, violation of the charter provisions, failure to meet requirements for student performance, failure to meet standards for fiscal requirements of audit requirements, violation of the CSL, and fraud. 24 P.S. §17-1729-A.

[10] Section 1724-A(d) of the CSL states, in relevant part, that "[e]very employe[e] of a charter school shall be provided the **same** health care benefits as the employe[e] would be provided if he or she [was] an employe[e] of the local district." 24 P.S. §17-1724-A(d) (emphasis added). In *Gillingham Charter School v. Pottsville Area School District*, charter school employees had **similar** coverage when compared to school district employees, and the CAB addressed the question of whether such coverage complied with the CSL's requirement that charter school employees and school district employees have the same healthcare coverage. The CAB concluded that similar healthcare coverage, rather than identical or the same healthcare coverage, satisfied the CSL's requirement. CAB Docket No. 2016-11 at *8.

with a Level I certificate, the trial court concluded that the CSL does not require charter school teachers to obtain Level II certifications after 6 years. The trial court noted that while District teachers are required to satisfy certain requirements for certification under the Pennsylvania Department of Education's regulations at 22 Pa. Code §§49.82-49.83 (Instructional I and II certificates),[11] these sections do not apply to charter schools. As support, the trial court focused on section 1724-A(g) of the CSL (School Staff), which states:

> Professional employees [at a charter school] who hold a first level teaching or administrative certificate may, **at their option**, have the time completed in satisfactory service in a charter school applied to the length of service requirements for the next level of certification.

22 P.S. § 17-1724-A(g) (emphasis added). The trial court reasoned that because these regulations have not been incorporated into the CSL, the District could not impose its teacher certification amendment. The District now appeals.

## II. Issues

On appeal,[12] the District argues that the trial court erred (1) when it held that the District unilaterally imposed improper conditions on the Charter School and

---

[11] An Instructional I Certificate is valid for only six service years and must be converted to an Instructional II Certificate (permanent certificate) prior to expiration. *See* 22 Pa.Code § 49.82. To obtain an Instructional II Certificate, an applicant must, *inter alia*, complete 24 credit hours of collegiate study. *See* 22 Pa.Code § 49.83. A failure to meet these requirements results in the loss of the ability to teach in Pennsylvania.

[12] The issues presented herein require interpretation of the CSL; thus, they are issues of law, over which our standard of review is *de novo* and our scope of review is plenary. *Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016). When examining the CSL, we keep in mind the rules of statutory interpretation, including that a court's primary goal in interpreting a statute is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. §1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext **(Footnote continued on next page…)**

7

incorrectly applied the Supreme Court's decision in *Discovery*; (2) when it ruled that the District could not condition the charter renewal on the Charter School's compliance with 24 P.S. §17-1724-A(d) by requiring the Charter School to offer its employees the same healthcare benefits that the District provides to its bargaining unit members; and (3) when it ruled that the District could not condition the charter renewal on the Charter School's compliance with 24 P.S. §17-1724-A(a) with respect to teacher certification.

## III. Discussion

### A. Whether the Trial Court Erred When It Ruled that the CSL Does not Authorize Unilateral Amendment to the Charter

In its first issue, the District argues that the trial court erred in holding that the District unilaterally imposed improper conditions on the Charter School and incorrectly applied *Discovery*. The District claims that in *Discovery*, the Supreme Court made a finding as to what "material terms of a charter include." (District's Br. at 19.) The District, in reliance on *Discovery*, argues that materially altering a charter "include[s], among other things, 'the identification of the charter applicant; the name of the proposed school and the grades it will instruct; the proposed governing structure; the school's mission, education goals, curriculum, assessment methods, admissions policy, discipline policies, community involvement, financial plan, and parental complaint procedure; a description of the physical facility; the proposed school calendar and length of school day; and the proposed faculty and professional development plan.'" (District's Br. at 19) (referencing *Discovery*, 166 A.3d at 316-17). The District asserts its changes to the Charter School's charter did not fall into any of these categories so they did not constitute a material change. Therefore, the

---

of pursuing its spirit." *Id.* §1921(b). Additionally, courts construe every statute, if possible, to give effect to all its provisions. *Id.* §1921(a).

District contends that the trial court incorrectly relied on *Discovery* to conclude that it unlawfully amended the charter.

### B. Discovery Charter School v. School District of Philadelphia

In *Discovery*, Discovery Charter School (Discovery) operated a charter school in Philadelphia under a five-year charter granted in 2003 and renewed in 2008. The charter provided that Discovery may enroll students in grades K through 8 with a maximum of 620 students. The charter also provided that Discovery could operate its school only at 5070 Parkside Avenue, Philadelphia, and could not relocate the school to a different facility. 166 A.3d at 306-07. Eventually, the charter school received enrollment applications that exceeded its enrollment cap. In December of 2012, it applied to renew its charter for a third five-year term and notified the school district of its plans to enroll up to 1,050 students and to relocate the school to a larger facility. *Id*. The school district renewed the charter but did not permit an enrollment increase or permission to relocate. Discovery refused to sign the renewal and appealed to the CAB, which quashed the appeal for lack of jurisdiction, holding that the failure to act on Discovery's amendment request did not constitute a reviewable action as the CAB's jurisdiction is statutorily limited to decisions revoking or not renewing a charter.

On appeal, this Court reversed based on its prior case law which held that charter schools have an implicit statutory right to amend their charters. We remanded to the CAB to consider Discovery's appeal. *Id*. at 308. The Supreme Court reversed, concluding that this Court erred by creating an extra-legislative scheme for amending a charter that is not contained in the CSL. *Id*. at 310. It noted that there was nothing in the CSL that "suggests that a charter school is entitled to amend the material terms of its charter so long as the school is performing in a manner that does not require revocation or nonrenewal of its charter." *Id*. at 319. The Supreme Court stated, in no

9

uncertain terms, that "the CSL provides only for the charter's revocation or renewal/non-renewal." *Id.* Significant to the Supreme Court's determination was "the absence of a provision directing the renegotiation of new charter terms when the charter period ends." *Id.*

We disagree with the District's narrow reading of *Discovery*. In the District's cited section of the Supreme Court's decision in *Discovery*, the Supreme Court provided a non-exhaustive list of items that must be included in a charter school application to an authorizing district under section 1719-A of the CSL. The actual quote is as follows:

> The **application** must include information on **seventeen enumerated topics including,** *inter alia*, the identification of the charter applicant; the name of the proposed school and the grades it will instruct; the proposed governing structure; the school's mission, education goals, curriculum, assessment methods, admissions policy, discipline policies, community involvement, financial plan, and parental complaint procedure; a description of the physical facility; the proposed school calendar and length of school day; and the proposed faculty and professional development plan. *Id.* §17–1719–A.

*Id.* at 313-14 (emphasis added).

By the use of "*inter alia,*" the Supreme Court did not intend for its list to be exhaustive of all the required contents of a charter school application and at no point in its decision did the Supreme Court make a finding that these items were the only "material" terms of a charter. In fact, section 1719-A of the CSL lists seventeen required contents of a charter school application:

(1) The identification of the charter applicant.

(2) The name of the proposed charter school.

(3) The grade or age levels served by the school.

(4) The proposed governance structure of the charter school, including a description and method for the appointment or election of members of the board of trustees.

(5) The mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals.

(6) The admission policy and criteria for evaluating the admission of students which shall comply with the requirements of section 1723-A.

(7) Procedures which will be used regarding the suspension or expulsion of pupils. Said procedures shall comply with section 1318 [of the Public School Code].

(8) Information on the manner in which community groups will be involved in the charter school planning process.

(9) The financial plan for the charter school and the provisions which will be made for auditing the school under section 437 [of the Public School Code].

(10) Procedures which shall be established to review complaints of parents regarding the operation of the charter school.

(11) A description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements.

(12) Information on the proposed school calendar for the charter school, including the length of the school day and school year consistent with the provisions of section 1502 [of the Public School Code].

**(13) The proposed faculty and a professional development plan for the faculty of a charter school.**

(14) Whether any agreements have been entered into or plans developed with the local school district regarding participation of the charter school students in extracurricular activities within the school district. Notwithstanding any provision to the contrary, no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, that the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

(15) A report of criminal history record, pursuant to section 111 [of the Public School Code], for all individuals who shall have direct contact with students.

(16) An official clearance statement regarding child injury or abuse from the Department of [Human Services] as required by 23 Pa.C.S. Ch. 63 Subch. C.2 (relating to background checks for employment in schools) for all individuals who shall have direct contact with students.

**(17) How the charter school will provide adequate liability and other appropriate insurance for the charter school, its employees and the board of trustees of the charter school.**

24 P.S. §17-1719-A (emphasis added).

Section 1719-A of the CSL requires a charter school applicant to submit information on "[h]ow the charter school will provide adequate liability and other appropriate insurance for the charter school, its employees, and the board of trustees of the charter school." 24 P.S. §17-1719-A(17). It further requires a charter school applicant to submit information regarding the proposed faculty and a professional development plan for the faculty. 24 P.S. §17-1719-A(13). Therefore, a charter school applicant is clearly statutorily required to submit information to its authorizing school district regarding its healthcare offered to employees and the required qualifications of

12

its staff, which means, contrary to the District's argument, these terms are clearly "material." Moreover, as the Charter School aptly points out, health insurance benefits offered by an employer are an important aspect of compensation, and it is not uncommon for employers to use health insurance benefits as inducements to obtain or retain talented employees. Presumably, there are employees at the Charter School that have chosen to work for the Charter School based on the health insurance benefits it offers. If there are changes to those benefits, it can be assumed that there will be employees who will be unhappy with those changes which may cause some employees to leave the Charter School or the changes will create issues in recruiting talented teachers to the Charter School. The same could be said that particular job requirements, such as the requirement to obtain certain Pennsylvania Department of Education certifications, could change whether an employee wishes to work at the Charter School or stay at the Charter School. Therefore, we find that amendments to the Charter School's healthcare benefits and certification requirements for its employees are "material" amendments.

In light of the above, the trial court did not err in finding that the District amended the Charter School's charter unlawfully. The District must (1) renew; (2) elect to not renew; or (3) revoke the charter. There is no option to amend the charter, and the Pennsylvania Supreme Court decision in *Discovery* makes clear that unilateral amendments to material terms of a charter are not permitted.

Because we conclude that the District may not unilaterally amend the charter as it has done here, we do not need to address whether the conditions in and of themselves were illegal.

13

## IV. <u>Conclusion</u>

For the foregoing reasons, we affirm the trial court's February 22, 2021 order granting summary judgment in favor of the Charter School.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Souderton Charter School        :
Collaborative                      :
                                  :   No.  237 C.D. 2021
            v.                :
                                  :
Souderton Area School District,    :
              Appellant     :

## ***ORDER***

AND NOW, this 3rd day of January, 2023, the February 22, 2021 order of the Court of Common Pleas of Montgomery County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge